**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Samson Resources Corporation, *et al.*, | Case No. 15-11934 (BLS) |
| Debtors. | (Jointly Administered) |

| | |
|---|---|
| PETER KRAVITZ, as Settlement Trustee of and on behalf of the SAMSON SETTLEMENT TRUST, | Adv. Proc. No. 17-51524 (BLS) |
| Plaintiff, | |
| v. | **Re: Docket Nos. <u>45, 46, 47, 64, 65, 69, & 72</u>** |
| SAMSON ENERGY COMPANY, LLC; SAMSON EXPLORATION, LLC; SAMSON OFFSHORE, LLC; SFT (DELAWARE) MANAGEMENT, LLC; ST 2008 (DELAWARE) MANAGEMENT, LLC; CHARLES AND LYNN SCHUSTERMAN FAMILY FOUNDATION; STACY FAMILY TRUST; STACY FAMILY DELAWARE TRUST; All Trustees of the STACY FAMILY TRUST and STACY FAMILY DELAWARE TRUST, including STACY SCHUSTERMAN, LYNN SCHUSTERMAN and WILMINGTON SAVINGS FUND SOCIETY, FSB, as Co-Trustees of the STACY FAMILY TRUST AND/OR STACY FAMILY DELAWARE TRUST; SCHUSTERMAN 2008 DELAWARE TRUST; All Trustees of the SCHUSTERMAN 2008 DELAWARE TRUST, including STACY SCHUSTERMAN, C. PHILIP THOLEN and WILMINGTON SAVINGS FUND SOCIETY, FSB, as Co-Trustees of the SCHUSTERMAN 2008 DELAWARE TRUST; STACY SCHUSTERMAN; LYNN SCHUSTERMAN; HAL SCHUSTERMAN; JEROME "JAY" SCHUSTERMAN; STEVEN DOW; RUTH SCHUSTERMAN; MARY LEE SCHUSTERMAN; MEITAL SCHUSTERMAN; HALEY SCHUSTERMAN; JUDY POZNICK; | |

DEBORAH MORRISON; DALE
SCHUSTERMAN; RENEE MORRISON;
CAROL WILSON; SHANE FROEBEL;
TAMARA FROEBEL; and DOES 1-1000,

Defendants.

Christopher Shore, Esq.
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020

Michael J. Farnan, Esq.
Farnan LLP
919 North Market Street
Wilmington, DE 19801

*Counsel to Plaintiff*

P. Sabin Willett, Esq.
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, MA 02110

David M. Stern, Esq.
Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars
Los Angeles, CA 90067

Michael R. Nestor, Esq.
Young Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, DE 19801

*Counsel to Moving Defendants*

## <u>OPINION</u>[1]

The efficacy of releases in Chapter 11 plans has been a hot topic for many years.  Barrels of ink have been spilt on the issue in judicial opinions, scholarly journals, trade publications and legal education conferences.  Attention typically is focused on complex jurisdictional and constitutional concerns, as well as profound policy debates about the wisdom and fairness of providing broad releases of liability for non-debtor third parties under a confirmed Chapter 11 plan.  Less often is consideration given to the simple practical questions attendant to any release: Who is being released?  What claims or causes of action are being released?  And finally, does the release language in a plan actually accomplish the intended result?  This case concerns these latter questions.

The Debtors'[2] confirmed Plan was the result of protracted and hard-fought negotiations between the Debtors and the Creditors' Committee, achieved only through the intense efforts of the parties and a judicial mediator.  The record suggests that the Committee supported confirmation of the Plan largely in the expectation that the Trust to be created under the Plan would pursue litigation on a post-confirmation basis against individuals and entities related to the Schusterman family.  The Schusterman family previously owned the Debtors' business and sold it in a 2011 leveraged buyout for over $7 billion.  The Committee proposed to sue to recover billions of dollars from the Schustermans.

The Plan was confirmed in 2017, and the Confirmation Order has long been final.  As described more fully below, the Plan contained broad releases.  The universe of "Released Parties" is defined in a Plan provision that is a single sentence containing 332 words, over a

---

[1] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 7052, 9014(c).
[2] Capitalized terms are defined *infra*.

1

dozen clauses, 38 commas and at least eight separate provisos.  When this lawsuit was filed by

the Trust against various Schusterman entities, certain defendants promptly sought summary

judgment on the ground that they are each "Released Parties" under the Plan, and thus immune

from suit here.  The Trustee's response is that, given that this suit was the central feature that led

the Committee to support the Plan, it is simply inconceivable that the Plan would operate to

release some or all of these defendants.  And yet, for the reasons that follow, this appears to be

precisely what happened.

## BACKGROUND

Before the Court is the Motion for Summary Judgment Based on Plan Release (the

"Motion") filed by Stacy Family Trust, SFT (Delaware) Management, LLC ("SFTDM"), ST

2008 (Delaware) Management, LLC ("ST 2008"), Schusterman 2008 Delaware Trust, Stacy

Family Delaware Trust, Samson Exploration, LLC ("Samson Exploration"), Samson Offshore,

LLC ("Samson Offshore"), and Samson Energy Company, LLC ("Samson Energy")

(collectively, the "Moving Defendants") [Docket No. 46].  By the Motion, the Moving

Defendants assert that they fall within the scope of the releases granted by the Debtors to third

parties under the confirmed Plan.  Samson Settlement Trust (the "Trust"), Plaintiff herein,

opposes the Motion [Docket No. 64].  For the reasons stated below, the Court will grant the

Motion as to certain Moving Defendants and deny the Motion as to the balance of the Moving

Defendants.

On September 16, 2015 (the "Petition Date"), Samson Resources Corporation and its

affiliates (collectively, the "Debtors") filed for chapter 11 relief.  The Debtors' Global Settlement

Plan of Reorganization (the "Plan") [Docket No. 2009] was confirmed by Order dated February

13, 2017 [Docket No. 2019], and the Plan became effective on March 1, 2017 (the "Effective

Date"). Pursuant to the Plan, the Trust was created on the Effective Date and was funded with cash as well as certain estate causes of action to prosecute on a post-confirmation basis.

i.    *The 2011 Transaction*

Over three years before the Petition Date, the Debtors were acquired through a stock sale transaction (the "LBO") that forms the basis of this lawsuit. In 2011, a consortium of investors led by KKR Group (the "Sponsors") acquired 100% of the outstanding common stock of Samson Investment Company from the Charles and Lynn Schusterman Family Foundation, SFTDM, and ST 2008 (collectively, the "Selling Shareholders") for approximately $7.2 billion. The transaction, which resulted in the acquisition of substantially all of the Debtors' onshore domestic assets, closed in December of 2011. Certain of the Debtors' offshore operations and Gulf of Mexico assets remained with the Selling Shareholders. The LBO was financed in part by the issuance of over $3.25 billion in new debt by the Debtors. As part of the transaction, the Selling Shareholders received over $6 billion in cash and approximately $180 million in Preferred Stock of the Debtors. In the years following the LBO, the Debtors' financial condition significantly deteriorated leading up to the Petition Date in September 2015.

ii.    *Post-Confirmation Litigation*

Post-confirmation, the Trustee filed his complaint for recovery of fraudulent transfers against the Moving Defendants (the "Complaint") [Adv. Docket No. 3]. The Complaint alleges in part that the LBO left the Debtors insolvent and without the capital necessary to survive. It is the Trustee's theory that certain actions by the Moving Defendants and other defendants during the 2011 transaction ultimately precipitated the Debtors' 2015 bankruptcy filing. Accordingly,

the Trustee alleges that certain monies transferred under the LBO are recoverable as

constructively fraudulent conveyances.[3]

At this early stage of the proceedings, the Moving Defendants assert that they each fit

within the definition of "Released Party" under the Debtors' confirmed Plan, and thus cannot be

sued by the Trustee.  The Motion has been fully briefed and argued, and is ripe for disposition.

## JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(b)(1).

Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of the

Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F) and (O).

## DISCUSSION

### I.    The Parties' Positions

The Moving Defendants' primary argument is that they are beneficiaries under the

release contemplated by the Plan (the "Plan Release") and are therefore protected from suit.

Specifically, they note that the Plan defines "Released Parties" to include current and former

affiliates and those affiliates' current and former shareholders.  The Plan operated to release and

discharge any and all estate causes of action against Released Parties.  It is the Moving

Defendants' position that each of them falls squarely within one or more sections of the

definition of "Released Parties" under the Plan and hence they are immune from suit here.

Finally, because the relevant provisions of the Plan and the Confirmation Order are clear and

unambiguous, the Moving Defendants assert that the Court should not, and cannot, look to

extraneous sources beyond those documents to construe and interpret the Plan's release

---

[3] By prior Order dated June 15, 2018, the Court dismissed three counts in the Complaint that asserted claims predicated upon actual fraudulent transfers [Adv. Docket No. 61].

provisions or to identify the intent of the parties in proposing and supporting the Plan during the Chapter 11 case.

It is the Trustee's position that, from the outset of the Chapter 11 case the Creditors' Committee had insisted upon preserving causes of action against the Moving Defendants, and that the central purpose of the Trust created under the Plan was to acquire and prosecute causes of action against the Moving Defendants. At bottom, the Trust contends that there was never any intention to release the Moving Defendants, and to the extent that they may technically fall within the definition of "Released Party," that is the result of imprecise language or scrivener's error. The Trustee next asserts that there are disputed issues of fact with respect to corporate relationships and control as to Samson Offshore and Samson Energy, which preclude a finding that they are "affiliates" for purposes of the Plan Release. The Trustee further asserts that additional discovery is necessary to determine whether SFT (Delaware) Management and ST 2008 were "holders of Preferred Interests" and therefore excluded from the Plan Release. Finally, the Trustee argues that the inclusion of two of the Moving Defendants in the schedule of retained causes of action in the Plan Supplement creates ambiguity as to the intent behind the Plan, which must be resolved through the Court's examination of parol evidence. The Trustee submits that even cursory examination of sources outside the Plan and the Confirmation Order – including the parties' representations to the Court during the Chapter 11 case and in the hearings on confirmation of the Plan – will reveal that these Moving Defendants were not intended to be released under the Plan.

## II.  Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding through Bankruptcy Rule 7056, "[t]he court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he judge's function is not himself to

weigh the evidence and determine the truth of the matter but to determine whether there is a

genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) "[S]ummary

judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248 (internal

quotation omitted).  In other words, "[i]f reasonable minds could differ as to the import of the

evidence ... a verdict should not be directed."  *Id.* at 250-51 (citation omitted).

   The movant "bears the initial responsibility of informing the ... court of the basis for its

motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S 317, 323 (1986).

And "[w]hen the moving party has carried its burden ... the nonmoving party must come forward

with specific facts showing that there is a *genuine issue for trial.*"  *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original) (internal

quotation omitted).  "On summary judgment, [the Court] must draw all reasonable inferences in

favor of the nonmoving party."  *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 333 (3d Cir.

1995).

   Courts commonly review written releases under Rule 56, and summary judgment is often

granted on the basis of a written release.  *See, e.g., Conley v. Dan-webforming Int'l A/S (Ltd.)*,

1992 WL 401628, at *9-*10 (D.Del.Dec. 29, 1992) (granting summary judgment on the basis of

a written release); *Edge of the Woods v. Wilmington Sav. Fund. Soc'y, FSB*, 2001 wl 946521, at

*1 (Del.Super.Ct. Aug. 16, 2001) (granting summary judgment on the basis of a release).

Summary judgment is particularly appropriate where the release is unambiguous.  "[I]t is a fundamental principle of contract law that disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law, and are, therefore, appropriate cases for summary judgment."  *Tamarind Resort Assocs. V. Gov't of Virgin Islands*, 138 F.3d 107, 110 (3d Cir. 1998);  *see also In re Quintus Corp.*, 353 B.R. 77, 82 (Bankr.D.Del. 2006).

### III.    Analysis

### a.    Confirmation Orders are Final Judgments

Case law teaches that an order confirming a plan of reorganization operates as a final judgment binding a debtor and its successors.  *United States Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270-72, 275 (2010) (a confirmed plan is binding on all parties in interest, provided the plan proponent afforded such parties adequate notice, even if the plan violates the Bankruptcy Code);  *In re MB Industries, L.L.C.*, 2018 WL 3691304 (Bankr.W.D.La. 2018) (a court may contractually subordinate a claim based on the terms of a confirmed chapter 11 plan).  "Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect."  *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995);  *see also In re Dorset*, 2012 WL 5389649, at *2 (Bankr. D. Del. Nov. 2, 2012) ("a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.").  This is not a controversial proposition.

Although an order confirming a plan of reorganization operates as a final judgment, the Court may look beyond words of the document in the event of ambiguity.  *See Hatco Corp. v. W.R. Grace & Co.*, 59 F.3d 400, 407 (3d Cir. 1995) ("When a writing is ambiguous New York cases require the admission of extrinsic evidence to establish or disprove the intent of the parties.").  An agreement is ambiguous if "it is capable of more than one meaning when viewed

7

objectively by a reasonably intelligent person who examines the entire contract [] and knows the customs, practices, usages and terminology generally understood in the particular trade of business." *In re Musicland Holding Corp.*, 374 B.R. 113, 120 (Bankr. S.D.N.Y. 2007); *see also In re RadioShack Corp.*, 550 B.R. 700, 711 (Bankr. D. Del. 2016).  However, "[u]nless some ambiguity is to be found within the plan itself, the Court has no basis to look beyond its text. . . . Where the language of the Plan is unequivocal, therefore, a Court must adopt the plain and natural meaning only of the words contained within the text of the instrument itself." *In re Victory Markets, Inc.*, 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998).  In a nutshell, unless there is ambiguity, the terms of the Confirmation Order and the Plan are controlling and the Court is not free to look to material beyond the provisions of the Confirmation Order and the Plan.

The Trustee contends that the Moving Defendants bear a particularly heavy burden of proof on any affirmative defense of release.  Under New York law, a party is required to demonstrate that the release contains an "explicit, unequivocal statement of a present promise to release [a party] from liability." *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 515 (2d Cir. 2011).  The release must reveal an "unmistakable intent of the parties" to release the causes of action asserted in the Complaint.  *Id.*  Any release purporting to excuse a party from its misconduct must survive "close judicial scrutiny." *Gross v. Sweet*, 49 N.Y.2d 102, 106 (N.Y. 1979).

b.  <u>Plan Releases</u>

Applying these principles, the Court turns to consideration of the Moving Defendants' contention that they are Released Parties under the Plan.  As noted, the Plan contained expansive releases of liability.  The scope of these releases, as set forth in the Plan and approved by the Confirmation Order, could hardly be broader or more all-encompassing:

8

. . . [T]he Released Parties are deemed expressly, unconditionally, generally, and individually and collectively, acquitted, released and discharged by the Debtors, the Reorganized Debtors, and the Estates, each on behalf of itself and its predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever . . . .

Plan Art. VIII.E [Docket No. 2009].

Each of the Moving Defendants alleges that it is a beneficiary of this expansive release because it fits within the definition of "Released Party" as either a former affiliate of Debtors and Non-Debtor Subsidiaries, a former direct or indirect equity holder of Debtors and Non-Debtor Subsidiaries, or as a current direct or indirect equity holder of former affiliates of Debtors and Non-Debtor Subsidiaries.[4]  The Plan defines "Released Party" as follows:

124. "*Released Party*" means each of the following, in their capacity as such: (a) the First Lien Agent; (b) the First Lien Secured Parties; (c) the Second Lien Agent; (d) the Second Lien Lenders; (e) each of the Sponsors; (f) *the Non-Debtor Subsidiaries*; (g) the Committee and any member thereof; (h) the Senior Noteholders; (i) the Senior Notes Indenture Trustee; (j) the Backstop Parties; and (k) with respect to each of the Debtors, the Reorganized Debtors, *and each of the foregoing Entities in clauses (a) through (j), such Entity's current and former affiliates and such Entity's and such affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly)*, but *except* for any former equity holder in Parent (regardless of whether such interests were held directly or indirectly) that transferred or redeemed its equity interests for the purpose of taking a worthless stock deduction prior to the Petition Date, *provided* that, for the avoidance of doubt, the foregoing exception shall not include any of the Sponsors or any of their respective current and former equity holders or affiliates), predecessors, successors and assigns, subsidiaries, managed accounts or funds, and each of their respective current and former equity holders (*except* for any former equity holder in Parent (regardless of whether such interests were held directly or indirectly) that transferred or redeemed its equity interests for the purpose of taking a worthless stock deduction prior to the Petition Date, *provided* that, for the avoidance of doubt, the foregoing exception shall not include any of the Sponsors or any of their respective current and former equity holders or affiliates), officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys,

---

[4] As these terms are defined in the Plan.

accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each in their capacity as such; and (k) the DTC; *provided that the Released Parties shall not include the Debtors' directors or officers before the 2011 Acquisition or the holders of the Preferred Interests.*

*Id.* at Art. I.A. (emphasis added).

Although the foregoing language is particularly dense, it is nonetheless clear that certain categories of parties were intended to enjoy releases from liability if the Plan was confirmed and went effective.  Included in this universe of releasees are current and former affiliates of the Debtors, as well as those affiliates' current and former management and shareholders.[5]  If the Moving Defendants can each demonstrate that they fall within one of these categories, then they are released and, correspondingly, they will have granted a broad release in favor of the Debtors in the process.[6]  *Id.*  The Court turns now to address the arguments of each of the Moving Defendants.

---

[5] The Trustee complains that the Moving Defendants' construction or application of the scope of the Plan Release is unreasonably and even ridiculously broad:

> For example, under Movants' interpretation, if the Selling Shareholders or their equity holders held 20% of the equity in Apple at any point in time from 1971 to 2011, we wouldn't of course be here, but Apple would be released under the Settlement Plan.  Further, under Movants' interpretation, anyone that ever held even one share of Apple, at any point in time, would be released under the Settlement Plan.  There are currently 4.92 billion outstanding shares of Apple.

Trustee's Brief at 38, n.14. Upon careful review, however, it seems to the Court that this is indeed a possible result of the literal terms of the Plan Release (but that is not what is before the Court today). Arguing that a plain-meaning application of Plan provisions drafted by the Trustee's legal predecessor and approved by the Creditors' Committee might yield a confounding result is of little help to the Trustee here, and only reinforces the impression that the Plan Releases could and should have been appropriately tailored to the relief the parties actually desired and negotiated for.

[6] The Trustee devotes considerable time to the argument that the Moving Defendants provided little or no consideration in exchange for the releases they now claim. However, the record reflects that the Court made specific findings at confirmation that each Released Party provided good and valuable consideration for the releases, and that the Debtors had otherwise satisfied their evidentiary burden for approval of the Plan Releases.  Confirmation Order at 17, Paragraph 34 [Docket No. 2019]. The time to challenge those findings and conclusions was at the confirmation hearing, and the Court cannot revisit or disturb those findings today.

i.    *Schusterman 2008 Delaware Trust and Stacy Family Delaware Trust*

The Trustee does not make any argument that there is ambiguity or a material issue of fact as to Schusterman 2008 Delaware Trust and Stacy Family Delaware Trust.  The record reflects that Schusterman 2008 Delaware Trust directly owns 100% of the membership interests in ST 2008, and was therefore at all relevant times an "equity holder" of a "former affiliate" of a Debtor. It is a former affiliate of all Debtors except SRC and a former affiliate of at least six of the seven Non-Debtor Subsidiaries.  Schusterman 2008 Delaware Trust fits within the definition of "Released Party."

The record reflects that Stacy Family Delaware Trust owns 100% of the membership interests in SFTDM, and is therefore an "equity holder" of a "former affiliate."  Stacy Family Delaware Trust is also a former affiliate of all Debtors except SRC as well as a former affiliate of at least six of the seven Non-Debtor Subsidiaries.  Stacy Family Delaware Trust fits within the definition of "Released Party."

As such, Schusterman 2008 Delaware Trust and Stacy Family Delaware Trust are each a Released Party under the Plan.  Both of these Moving Defendants are entitled to summary judgment in their favor.

ii.    <u>*Samson Energy and Stacy Family Trust*</u>

Next, the Court turns to the Trustee's contention that the Plan Supplement creates an ambiguity as to the Moving Defendants Samson Energy and Stacy Family Trust that allows the Court to examine parol evidence.

The record reflects that Samson Energy was a wholly-owned subsidiary of SFTDM. SFTDM, as outlined above, falls within the definition of "Released Party."  Because SFTDM

11

owned 20% or more of SIC, Samson Energy is also a former affiliate of SIC.  Because SFTDM indirectly owned more than 20% of a number of Non-Debtor Subsidiaries, Samson Energy is also a former affiliate of one or more Non-Debtor Subsidiaries.  The record reflects that Samson Energy is also an "equity holder" of Samson Offshore and Samson Exploration as of the date of the Plan Release.  For these reasons, the Court finds that Samson Energy fits within the definition of "Released Party."

Stacy Family Trust was a former part owner of Debtor Samson Investment Company ("SIC").  As a former owner of SIC shares, Stacy Family Trust is a former equity holder and former affiliate of SIC.  Stacy Family Trust is also a former affiliate of at least six of the seven Non-Debtor Subsidiaries.  Stacy Family Trust is therefore also within the definition of a "Released Party" under the Plan.

However, the Trust points out that, notwithstanding the fact that Stacy Family Trust and Samson Energy fall within the definition of "Released Party," both of these parties are also expressly identified on Exhibit C-2 of the Plan Supplement.  That exhibit names Stacy Family Trust and Samson Energy as entities that the Settlement Trust may pursue as "Settlement Trust Retained Causes of Action."  The record reflects that Exhibit C-2 identifies scores of parties that were expected to be sued or pursued by the Trust on a post-confirmation basis.  The Trustee argues that these entities' inclusion on the "Settlement Trust Retained Causes of Action" list creates ambiguity as to whether they were intended to be a Released Party.

The Moving Defendants contend that because the Confirmation Order controls in the event of an inconsistency, the Court must ignore contradictory language in the Plan Supplement.  The Confirmation Order does indeed provide that "[i]n the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control."  Confirmation Order

§ 137 [Docket No. 2019].  The Plan incorporated by reference "the documents comprising the Plan Supplement."  Plan at 5. [Docket No. 2009].   However, the issue here is not which document controls, but rather whether the documents give rise to an ambiguity in their interpretation.  The relevant documents yield two mutually exclusive answers: either these two Moving Defendants are released as affiliates and shareholders, or they remain subject to suit as counterparties in a schedule of retained causes of action.  The Court finds that the Confirmation Order, the Plan, and the Plan Supplement together create an ambiguity in this context, which allows the Court to look to parol evidence.

Provided this latitude as to these two Moving Defendants, the Court looks first to the Disclosure Statement for guidance.  The Disclosure Statement outlined what was being reserved by the Plan:

> On the Effective Date, and except to the extent otherwise reserved in the Plan Supplement, the Debtors, on behalf of themselves and their estates, shall release any and all Avoidance Actions and the Debtors and the Reorganized Debtors, and any of their successors or assigns, and any Entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions; *provided that unless otherwise released pursuant to the Restructuring Support Agreement or the Plan, the Debtors shall not release any Avoidance Actions arising out of or related to the 2011 Acquisition.*

Disclosure Statement for First Plan at 16 [D.I. 16] (emphasis added).

The Court concludes that there was not an intention to release Stacy Family Trust and Samson Energy.  The Disclosure Statement shows that the parties intended for avoidance actions arising from the 2011 Acquisition to be preserved for the Trust.  There is no dispute that the Complaint filed by the Trustee asserts "Avoidance Actions arising out of or related to" the LBO.

Accordingly, the Court finds that Stacy Family Trust and Samson Energy are not Released Parties under the Plan. Summary judgment as to these Moving Defendants will be denied.[7]

### iii.    Samson Exploration and Samson Offshore

The Trustee challenges whether Samson Exploration and Samson Offshore actually meet the definition of "affiliate" in the Plan Release. The parties dispute whether the Court should apply the ordinary meaning of the term or the Bankruptcy Code definition.[8] The Court notes that, for purposes of its analysis under the Moving Defendants' Motion, both definitions lead to the same result here. Under either definition, in order to be considered an "affiliate," Samson Exploration and Samson Offshore must individually demonstrate that the Debtors exercised a measure of control over each entity at some point in time. In the event of such a showing, Samson Exploration and Samson Offshore would each fit within the definition of "affiliate" and therefore be "Released Parties." The Trustee argues that that there is an insufficient record regarding the corporate relationships and which entity is an affiliate of which. The Court agrees with the Trustee and finds that the Moving Defendants have failed to meet their burden of establishing that no dispute of material fact remains with respect to the issue of affiliate status and control.

---

[7] Ambiguity exists only as to the Stacy Family Trust and Samson Energy on account of the interplay between the Plan and the Plan Supplement. Where there is no ambiguity as to a Moving Defendant (viz., Schusterman 2008 Delaware Trust and the Stacy Family Delaware Trust), the Court is not free to look to external sources or parol evidence to construe or interpret the Plan and Confirmation Order.

[8] In defining "affiliate," courts often look to the Securities Act of 1933 (the "33 Act"), the Securities Exchange Act of 1934 (the "34 Act"), and Black's Law Dictionary. The 33 Act and 34 Act define "affiliate" as a "person that directly, or indirectly through one or more intermediates, controls or is controlled by, or is under common control with, the person specified." 17 C.F.R. § 230.405; 17 C.F..R. § 240.12b-2. Black's Law Dictionary defines the term as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation. The Bankruptcy Code defines "affiliate" as an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . . ." 11 U.S.C. 101(2)(A).

*iv.    SFTDM and ST 2008*

As noted above, the Plan's broad releases expressly exclude holders of Preferred Interests in the Debtors.  The record reflects that $180 million in Preferred Interests were issued to the Selling Shareholders in 2011 in connection with the LBO.  The Moving Defendants allege that SFTDM and ST 2008 never received or held Preferred Interests and therefore fall within the ambit of the Plan Releases.  The Trustee contends that the record is not sufficiently developed for the Court to determine whether SFTDM and ST 2008 may be holders of Preferred Interests as described within the definition of "Released Party."  The Trustee argues that the Court should not accept the Moving Defendants' unsupported assertion that SFTDM and ST 2008 never owned Preferred Interests until the Trustee has had the opportunity to conduct discovery.

The Court turns first to whether these entities would otherwise fit within the definition of "Released Party."  The record reflects that ST 2008 and SFTDM were direct owners of SIC at the time of the 2011 Acquisition and owned outstanding shares of SIC prior to the 2011 Acquisition. As such, ST 2008 and SFTDM are former equity holders and former affiliates of SIC.  ST 2008 and SFTDM are each former affiliates of all Debtors except Samson Resources Corporation ("SRC") and former affiliates of at least six of the seven Non-Debtor Subsidiaries.  Both therefore fit within the definition of "Released Party."

The Court further finds that the record has not been sufficiently developed with respect to whether SFTDM and ST 2008 were holders of Preferred Interests.  If the record were to establish that SFTDM and ST 2008 were in fact holders of Preferred Interests, then they would be excluded from the release under the Plan.  This raises an issue of material fact, and the Court

15

cannot grant summary judgment in favor of these Moving Defendants at this point in the

proceedings.[9]

**<u>CONCLUSION</u>**

At bottom, the Trustee's position boils down to, "the Plan just can't mean what it says."

To vindicate this proposition, the Trustee asks that the Court largely disregard its textual analysis

of the Plan and the Confirmation Order and look instead to the tangled and protracted history of

the Chapter 11 proceedings.  The Trustee's briefing reflects that no fewer than five separate

plans were filed (including a competing plan filed by the Committee) before the submission of

the final agreed Plan that enjoyed the support of the Debtors and the Committee.  He directs the

Court to a host of provisions in prior plan iterations that actually would have operated to carve

the Moving Defendants out of the Plan Releases.  But those provisions are notably absent from

the final Plan confirmed by the Court.[10]

Courts have held that a plan is effectively a contract between a debtor and its

stakeholders.  Those stakeholders vote upon a plan based upon their assessment of what the plan

will accomplish, and what they will receive under it.  Once a plan is confirmed and the order

---

[9] At argument, the Trust contended that the term "holders of Preferred Interests" was actually intended as a shorthand, collective label for all of the Moving Defendants, irrespective of whether they ever held Preferred Interests. *See* Transcript at 73-79; *see also* Trustee Objection at 39. ("The phrase 'holders of Preferred Interests' . . . was created and existed as a shorthand designation of a group of entities (plural) that the Debtors described to the Court on day one as the 'parties that sold the company.'"). Nothing in the Plan or Confirmation Order supports this contention, and the Court does not find that the phrase "holders of Preferred Interests" is ambiguous or otherwise susceptible to multiple interpretations. The Trustee's contention at argument that Moving Defendants who never actually received any Preferred Shares in the 2011 LBO are nevertheless "holders" because they may have had an unexercised right to receive Preferred Shares is similarly unavailing.

[10] The first five plans filed in this case expressly provided that "the Debtors shall not release any Avoidance Actions arising out of or related to the 2011 Acquisition." *See* Docket No. 15 at Article IV.L (first plan); Docket No. 960 Article IV.N (second plan); Docket No. 1316 at Article IV.M (third plan); Docket No. 1762 at Article IV.N. (fourth plan); Docket No. 1822 at Article IV.N (fifth plan). The final version of the Plan, confirmed by the Court, lacks this language and instead provides that "the Debtors . . . shall release any and all Avoidance Actions, except for the Settlement Trust Causes of Action, and the Debtors and the Reorganized Debtors, and any of their successors or assigns and any Entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all such released Avoidance Actions." *See* Docket No. 2009 at Article IV.O.

16

becomes final, the parties' rights, obligations and expectations are fixed.  The Trustee's argument – that plan treatment is driven not by reading the plan but by what may have been told to the bankruptcy judge during the case, or by prior plan provisions that were discarded in the final confirmed plan – is inconsistent with applicable law and contrary to sound policy.  The Plan here was confirmed by an Order that has become final.  Its provisions control.

Accordingly, this Court finds that Schusterman 2008 Delaware Trust and Stacy Family Delaware Trust have carried their burden under Rule 56 and are entitled to summary judgment on their contention that they have been released from liability in this adversary proceeding by operation of the Plan.  The Court finds that Samson Energy Company, LLC, Samson Offshore, LLC, Samson Exploration, LLC, Stacy Family Trust, SFT (Delaware) Management, LLC, and ST 2008 (Delaware) Management, LLC have not met their burden under Rule 56 to show that there is no genuine dispute as to any material fact.  The parties will meet and confer and submit an appropriate judgment order consistent with the Court's ruling within 14 days of the date hereof.

Dated: August 30, 2018
Wilmington, Delaware

By the Court:

BRENDAN LINEHAN SHANNON
UNITED STATES BANKRUPTCY JUDGE