IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SAMSON RESOURCES CORPORATION, *et al.*,<br><br>Debtor. | Chapter 11<br><br>Case No. 15-11934 (BLS)<br>(Jointly Administered) |
| PETER KRAVITZ, as Settlement Trustee of and on behalf of the SAMSON SETTLEMENT TRUST,<br><br>Plaintiff,<br><br>v.<br><br>SAMSON ENERGY COMPANY, LLC, *et al.*,<br><br>Defendants. | Adv. Pro. No. 17-51524 (BLS) |

## MEMORANDUM IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT AS TO CERTAIN DEFENDANTS

David M. Stern (admitted *pro hac vice*)
Robert J. Pfister (admitted *pro hac vice*)
Samuel M. Kidder (admitted *pro hac vice*)
**KTBS LAW LLP, F/K/A KLEE, TUCHIN, BOGDANOFF & STERN LLP**
1801 Century Park East, 26th Floor
Los Angeles, California 90067
(310) 407-4000

Sabin Willett (admitted *pro hac vice*)
Andrew J. Gallo (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, Massachusetts 02110
(617) 341-7700

Michael R. Nestor
Michael S. Neiburg
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
(302) 571-6699

Dated: March 11, 2022

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................... 4

ARGUMENT ........................................................................................................ 9

I. The Plan Release Bars Plaintiff's Claims Against The Released Defendants .......................................................................................... 10

   A. No Defendant Other than the Foundation has ever held Preferred Interests. .................................................................................. 10

   B. Samson Exploration and Samson Offshore were under the control of Debtor entities and were therefore subsidiaries and/or affiliates of the Debtors. ....................................................................... 11

      1. Samson Exploration was under the direct control of Debtors SHI and Resources. ....................................................... 11

      2. Samson Offshore was under the direct control of Debtor Resources. ............................................................................ 12

II. The Non-Transferee Defendants Were Never Transferees of Debtor Property ...................................................................................... 12

   A. Count I: The Cash Transfers ...................................................... 13

      1. The Non-Transferee Defendants are not "initial transferees" or "persons for whose benefit an initial transfer was made" under section 550(a)(1). ............................................... 13

      2. The Non-Transferee Defendants are not subsequent transferees of the Cash Transfers under section 550(a)(2). ......... 16

   B. Count III: The GC/OS Transfers ................................................ 17

      1. The Non-Transferee Defendants are not "initial transferees" or "persons for whose benefit an initial transfer was made" under section 550(a)(1), with respect to the GC/OS Transfers. .................................................................... 17

      2. The Non-Transferee Defendants are not subsequent transferees of the GC/OS Transfers. ......................................... 18

III. As No Viable Claim Remains Against Any Trust, Summary Judgment should enter in favor of the trustee defendants. ................................... 20

CONCLUSION..................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 330 (1986) ........................................................................9, 10, 17

*Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine,
    Underberg, Manley, Myerson & Casey)*,
    130 F.3d 52 (2d Cir. 1997)..............................................................................13, 14

*Baldi v. Lynch (In re McCook Metals, LLC)*,
    319 B.R. 570 (Bankr. N.D. Ill. 2005) ....................................................................13

*Bodenstein v. Univ. of N. Iowa (In re Peregrine Fin. Grp, Inc.)*,
    589 B.R. 360 (Bankr. N.D. Ill. 2018) ....................................................................15

*In re Bonded Financial Services, Inc.*,
    838 F.2d 890 (7th Cir. 1988) ...........................................................................14, 16

*Dembsky v. Frommer, Lawrence & Haug, LLP (In re Lambertson Truex, LLC)*,
    458 B.R. 155 (Bankr. D. Del. 2011) ......................................................................16

*Dietz v. Spangenberg*,
    2013 WL 4610530 (D. Minn. Aug. 29, 2013) ........................................................15

*In re Dreier LLP*,
    452 B.R. 451 (Bankr. S.D.N.Y 2011) ..............................................................15, 18

*Gellert v. Coltec Indus. (In re Crucible Materials Corp.)*,
    2012 Bankr. LEXIS 5102 (Bankr. D. Del. Oct. 31, 2012).....................................15

*Gladstone v. Bank of America (In re Vassau)*,
    499 B.R. 864 (Bankr. S.D. Cal. 2013) ...................................................................14

*Halperin v. Moreno (In re Green Field Energy Servs.)*,
    2018 Bankr. LEXIS 517 (Bankr. D. Del. Feb. 27, 2018) ......................................13

*Halperin v. Moreno (In re Green Field Energy Servs.)*,
    594 B.R. 239 (Bankr. D. Del. 2018) ..........................................................15, 16, 17

*Janvey v. Libyan Inv. Auth.*,
    840 F.3d 248 (5th Cir. 2016) ..................................................................................14

*Kravitz v. Samson Resources Corp. (In re Samson Resources Corp.)*,
    590 B.R. 643 (Bankr. D. Del. 2018) ............................................................. *passim*

*Merrill v. Dietz (In re Universal Clearing House Co.)*,
    62 B.R. 118 (D. Utah 1986) ................................................................14

*Peterson v. Hoffmann (In re Delta Phones, Inc.)*,
    2005 WL 3542667 (Bankr. N.D. Ill. Dec. 23, 2005) ...........................15

*Reily v. Kapila (In re International Management Association.)*,
    399 F.3d 1288 (11th Cir. 2005) ...........................................................14

*Riverside Acquisition Grp. LLC v. Vertis Holdings, Inc. (In re Vertis Holdings, Inc.)*, 536 B.R. 589, 632 (Bankr. D. Del. 2015) .....................................10

*Schechter v. 5841 Bldg. Corp. (In re Hansen)*,
    341 B.R. 638 (Bankr. N.D. Ill. 2006) ..................................................15

*Sher v. SAF Fin., Inc.*,
    2011 U.S. Dist. LEXIS 116967 (D. Md. Oct. 11, 2011)........................15

*Terry v. Meredith (In re Stephen S. Meredith, CPA, P.C.)*,
    527 F.3d 372 (4th Cir. 2008) ...............................................................14

**Statutes**

11 U.S.C. § 550(a)(1), (2) ................................................................ *passim*

**Other Authorities**

5 Collier on Bankruptcy, ¶ 550.02[4] (16th ed. 2022).................................14

Three overlapping groups of remaining defendants – the Released Defendants,[1] the Non-Transferee Defendants,[2] and the Trustee Defendants[3] (collectively, the "Moving Defendants") – submit this memorandum of law, together with the March 11, 2022 Statement of Undisputed Facts ("SUF"), and the *Declaration of Drew Phillips* ("2022 Phillips Declaration"), in support of their motion for summary judgment (the "Motion").[4]

## INTRODUCTION

The Motion seeks to trim away certain defendants who do not belong in this litigation because (i) they were released by the *Global Settlement Joint Chapter 11 Plan* [Bankr. Docket No. 2009] (the "Plan"), as authoritatively interpreted in the Court's 2018 opinion construing the

---

[1]   The "Released Defendants" are SFT (Delaware) Management, LLC ("SFTDM"), ST 2008 (Delaware) Management, LLC ("ST 2008"), Samson Exploration, LLC ("Samson Exploration"), and Samson Offshore, LLC ("Samson Offshore").  Although defined terms largely follow those in the *Complaint* [Docket No. 8] (the "Complaint"), SFT (Delaware) Management, LLC is referred to in the Complaint as "SFT," but that term risks confusion with co-defendant Stacy Family Trust (undefined in the Complaint), and thus the entity is referred to herein as SFTDM.

Filings in this adversary proceeding are referred to as "Docket No. __."  Filings in the main bankruptcy case are referred to as "Bankr. Docket No. __."

[2]   The "Non-Transferee Defendants" are Samson Exploration, Samson Offshore, Stacy Family Trust ("SFT"), Stacy Schusterman, and Lynn Schusterman.

[3]   The "Trustee Defendants" are C. Philip Tholen, Wilmington Savings Fund Society, FSB ("Wilmington Savings"), Stacy Schusterman, and Lynn Schusterman, each to the extent named solely in their capacity as trustees of other defendants independently entitled to summary judgment.

[4]   This is a renewed motion insofar as certain of the Moving Defendants now (after the close of all fact and expert discovery) seek relief they previously sought in 2018 in the *Motion of Defendants Stacy Family Trust, SFT (Delaware) Management, LLC, ST 2008 (Delaware) Management, LLC, Schusterman 2008 Delaware Trust, Stacy Family Delaware Trust, Samson Exploration, LLC, Samson Offshore, LLC and Samson Energy Company, LLC for Summary Judgment Based on Plan Release* [Docket No. 45]; and Stacy Schusterman seeks relief she previously sought in the *Motion of Defendant Stacy Schusterman for Summary Judgment as to Counts III, IV and Correlative Portions of Count V of the Complaint.* [Docket No. 48].

Plan's releases (the Released Defendants),[5] or (ii) there is no evidence that they received a transfer (the Non-Transferee Defendants), or (iii) they are named solely in their capacity as trustees of other defendants independently entitled to summary judgment (the Trustee Defendants). These grounds overlap as to certain defendants. For example, Samson Exploration is both a Released Defendant and a Non-Transferee Defendant, and Stacy Schusterman is both a Non-Transferee Defendant and a Trustee Defendant. Thus, these issues are presented together in this Motion.[6]

Discovery has confirmed that the Trustee has no viable claim against the Released Defendants based on the Release Opinion, which carefully parsed the Plan's release language, "a single sentence containing 332 words, over a dozen clauses, 38 commas and at least eight separate provisos." 590 B.R. at 646. The Release Opinion determined that only two open questions stood between the Released Defendants and their dismissal:

- First, did any Released Defendant ever receive or hold any "Preferred Interests?" (If so, it falls *outside* the scope of the Plan's releases.) *Id.* at 654.

- Second, as to Samson Exploration and Samson Offshore, did any Debtor ever exercise a measure of control over either of these entities? (If so, they fall *within* the scope of the Plan's releases.) *Id.* at 653.

Now that all fact discovery is closed, there is no dispute. No Released Defendant ever received or held any Preferred Interests, and various Debtors did indeed exercise *complete* control over

---

[5]   *Opinion Regarding Motion for Summary Judgment Based on Plan Release* [Docket No. 82] ("Release Opinion"), reported as *Kravitz v. Samson Resources Corp. (In re Samson Resources Corp.)*, 590 B.R. 643 (Bankr. D. Del. 2018).

[6]   An additional defense motion under Bankruptcy Code section 546(e) (the "Financial Participant Motion") is also being filed concurrently herewith. The Financial Participant Motion is related to this Motion as both concern SFTDM and ST 2008, both of which are Released Defendants and both of which are also recipients solely of transfers that are safe harbored under section 546(e).

Samson Exploration and Samson Offshore at some point in time.  The Released Defendants are, therefore, entitled to judgment as a matter of law.

Some defendants are also entitled to summary judgment for other reasons: because discovery has uncovered no facts suggesting that they received a transfer from any Debtor, whether directly or indirectly, or because they are trustees of trusts that are independently entitled to summary judgment.  The bases for the Motion may be summarized as follows:

| Moving Defendant | Basis for Summary Judgment | | |
|---|---|---|---|
| | Released | Non-Transferee | Trustee |
| SFTDM | X | | |
| ST 2008 | X | | |
| Samson Exploration | X | X | |
| Samson Offshore | X | X | |
| SFT | | X | |
| Stacy Schusterman | | X | X |
| Lynn Schusterman | | X | X |
| C. Philip Tholen[7] | | | X |
| Wilmington Savings | | | X |

---

[7]     As with the Non-Transferee Defendants, there is no evidence in the record that either C. Philip Tholen or Wilmington Savings received any transfers of property from any debtor. However, because they appear to be named in the Complaint only in their capacity as Trustees of other parties entitled to summary judgment, they do not need to seek relief in their individual capacities, even though they would be entitled to it.

Granting the Motion will dispose of all claims against all defendants other than the Charles and Lynn Schusterman Family Foundation (the "Foundation")[8] and Samson Energy Company, LLC ("Samson Energy"), and will appropriately streamline this adversary proceeding – which began with upwards of 25 defendants – for trial later this year.

## BACKGROUND

The Court is by now familiar with the transactions and transfers at issue in this litigation. For purposes of this Motion, the pertinent facts concern the Preferred Interests, Debtor control over Samson Exploration and Samson Offshore, and the non-receipt by the Non-Transferee Defendants of any transfers.

*The 2011 Acquisition*. Pursuant to a November 22, 2011 Stock Purchase Agreement (the "SPA"), SFTDM, ST 2008, and the Foundation sold a portion of their shares of Debtor Samson Investment Company ("SIC") to Debtor Samson Resources Corporation ("SRC") (the "2011 Acquisition"). SUF ¶ 9. The remaining shares were redeemed by SIC. *Id.* ¶ 10. In exchange for the sale and redemption, each selling shareholder received cash (the "Cash Transfers"). *Id.* ¶ 11. The Foundation – and only the Foundation – also received preferred shares of SRC, valued at $180 million as part of its consideration for the sale (the "Preferred Interests").[9] *Id.* ¶ 12. Neither of the other two selling shareholders (SFTDM and ST 2008), nor any other defendant received, or has ever held, any of the Preferred Interests. *See id.* ¶ 13.

---

[8]   The Financial Participant Motion, if granted, will reduce the exposure of the only non-released selling shareholder, the Foundation.

[9]   *See also* Plan Art. I.A.115. The Foundation confirmed its ownership of the Preferred Interests as of October 20, 2015 in its *Declaration of Status as a Substantial Shareholder*, dated October 22, 2015, *see* Bankr. Docket No. 245, and then again by declaration dated October 5, 2017, *see* Bankr. Docket No. 2900 (*Declaration of Intent to Claim a Worthless Stock Deduction*).

Under the SPA, the parties agreed that SIC's Offshore and Gulf Coast Divisions (together with certain miscellaneous corporate assets, the "GC/OS Assets"),[10] would be excluded from the 2011 Acquisition.  SUF ¶ 15.  This exclusion was effected through a series of internal transactions involving the Debtors and their former affiliates.  The GC/OS Assets were aggregated within Samson Offshore and Samson Exploration.[11]  The property actually transferred to Samson Energy, apart from immaterial assets, consisted of the equity interests (in the form of membership interests) in Samson Offshore and Samson Exploration which were held by Debtors Samson Resources *Company* ("Resources")[12] and Samson Holdings, Inc. ("SHI") (the "GC/OS Transfers").  *Id.*

*Samson Energy*.  Samson Energy, formed just prior to the closing of the 2011 Acquisition to hold the GC/OS Assets, has never been a conduit of value to any of its equity holders – or anyone else.  Quite the contrary, in the decade since the 2011 Acquisition it has been a substantial *consumer* of further contributions of capital from entities related to the Schusterman family.

When it was formed, Samson Energy faced large operating and capital requirements. SFTDM, its sole member, made an initial capital contribution of *$800 million in cash* in December, 2011.  *See id.* ¶ 25.  ST 2008 was later admitted as a member of Samson Energy in

---

[10]  *See* Purchase Agreement (2022 Phillips Decl. Ex. A), at 41, Disclosure Schedules 7.1 and 10.9.  The GC/OS Assets consisted mainly of membership interests in the LLCs that had come to own all assets used by SIC's Gulf Coast and Offshore Divisions, as well as other miscellaneous corporate assets.

[11]  Some of the GC/OS Assets were transferred to Samson Concorde Gas Intrastate, LLC ("Concorde").  Concorde was later merged into Samson Exploration in or around September 2013.  Concorde is not a named defendant.  The miscellaneous corporate assets were transferred directly to Samson Energy or its other subsidiaries.

[12]  Not to be confused with SRC - Samson Resources *Corporation*, the lead and reorganized debtor.

exchange for an initial capital contribution of $487,666.00. *Id*. ¶ 26.  In late 2015, SFT was admitted as a third member of Samson Energy after making an initial capital contribution of $152,787,600. *Id*. ¶ 27.  Shortly thereafter, SFT assigned its membership interests to its subsidiary, TFS Services, LLC ("TFS"). *Id*. ¶ 28.  Today, the three LLCs – SFTDM, ST 2008, and TFS – hold all of the membership interests in Samson Energy. *Id*. ¶ 29.  From 2011 through the date of this Motion, Samson Energy has received approximately $1.25 billion in cash equity infusions from its members to support business operations. *Id*. ¶ 30.  Samson Energy has also received additional funds in the form of loans from insiders, which it has repaid.  SUF. ¶ 33. Within the ordinary course of business since 2011, Samson Energy and its subsidiaries have also sold almost all of the GC/OS Assets to third parties (none of whom is a defendant in this action). *Id*. ¶ 35.  The proceeds of these sales were used to acquire additional assets in the ordinary course, to repay loans, and to also make partial returns to Samson Energy's members. *Id*. ¶ 36.

Prior to October 2016, the members in Samson Energy, including SFT during the short time it was a member, received no return on their investment. *Id*. ¶ 31.  From October 2016 through the date of this Motion, Samson Energy has returned capital to its members – SFTDM, ST 2008, and TFS – in the aggregate amount of approximately $573 million. *Id*. ¶ 32.

Except for the partial returns of capital, the sale of assets to third parties, and the loans described above, neither Samson Energy nor its subsidiaries have made dividends or equity distributions or transferred any of the GC/OS Assets or proceeds thereof to any other person or entity, including any of the Non-Transferee Defendants. *Id*. ¶ 36.

*The Plan*. The Plan provided broad releases to a number of parties, including all current and former affiliates[13] and subsidiaries of the Debtors *except* those that held Preferred Interests, as well as those entities' current and former agents, representatives, and other professionals. *See* Plan, Art. I.A.124(k);[14] *see also* Release Opinion, 590 B.R. at 651 ("Included in this universe of releasees are current and former affiliates of the Debtors. . . . If the Moving Defendants can each demonstrate that they fall within one of these categories, then they are released[.]"). These releases became effective when the Court entered its confirmation order. *See* Bankr. Dkt. No. 2019, Section I.M.1.h.b., ¶ 34.

*The Prior Release Motion*. Certain defendants moved for relief in 2018, on the basis that, as affiliates of both Debtor and Non-Debtor Subsidiaries, they had been released by the Plan.

---

[13]    The Court construed this provision in the Release Opinion, 590 B.R. at 653 n.8:

> In defining "affiliate," courts often look to the Securities Act of 1933 (the "33 Act"), the Securities Exchange Act of 1934 (the "34 Act"), and Black's Law Dictionary. The 33 Act and 34 Act define "affiliate" as a "person that directly, or indirectly through one or more intermediates, controls or is controlled by, or is under common control with, the person specified." 17 C.F.R. § 230.405; 17 C.F.R. § 240.12b-2. Black's Law Dictionary defines the term as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation. The Bankruptcy Code defines "affiliate" as an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor…." 11 U.S.C. 101(2)(A).

[14]    This section states the following:

> "*Released Party*" means each of the following, in their capacity as such: … (k) **with respect to each of the Debtors** … and each of the foregoing Entities in clauses (a) through (j), **such Entity's current and former affiliates and such Entity's and such affiliates' current and former** . . . **subsidiaries**, . . . **agents**, . . . **representatives**, . . . **and other professionals**, **each in their capacity as such**; . . . *provided* **that the Released Parties shall not include** the Debtors' directors or officers before the 2011 Acquisition or **the holders of the Preferred Interests**.

> *Id.* at 650-51.

The Court granted relief to defendants Stacy Family Delaware Trust and Schusterman 2008

Delaware Trust.[15]  It denied relief, without prejudice, to the remaining defendants.  Release

Opinion, 590 B.R. at 655.  With respect to the moving selling shareholder defendants (SFTDM

and ST 2008), the Court agreed that each would meet the Plan's definition of a Released Party

(as a former equity holder and affiliate of Debtor SIC),[16] but withheld judgment as there might

be an issue of fact as to whether they had held Preferred Interests.  *Id.*

      With respect to Samson Exploration and Samson Offshore, the Court held that the record

of corporate relationships was insufficiently developed, leaving a potential issue of material fact

as to whether each was an "affiliate" of a Debtor.  The Court held that this question turned on

whether the Debtors exercised any "measure of control over each entity at some point in time."

*Id.* at 653.

      Thereafter, the Trustee conducted exhaustive discovery.  That discovery leaves no

dispute as to the material facts.  As demonstrated in the 2022 Phillips Declaration, (i) neither

SFTDM, ST 2008, nor any other defendant other than the Foundation has been a holder of the

---

[15]  Stacy Family Delaware Trust owns 100% of the membership interests in Moving Defendant SFTDM, and Schusterman 2008 Delaware Trust owns 100% of the membership interests in Moving Defendant ST 2008.  *See* Samson Affiliations Pre-2011 Acquisition chart (2022 Phillips Decl. Ex. C).  The Court found that both qualified as Released Parties under the Plan because they were (i) equity holders of a former affiliate of the Debtors, (ii) former affiliates of all the Debtors except SRC, and (iii) former affiliates of at least six out of seven Non-Debtor Subsidiaries.  *See id.* at 654.

[16]  *See* Release Opinion, 590 B.R. at 654:

> The record reflects that ST 2008 and SFTDM were direct owners of SIC at the time of the 2011 Acquisition and owned outstanding shares of SIC prior to the 2011 Acquisition.  As such, ST 2008 and SFTDM are former equity holders and former affiliates of SIC.  ST 2008 and SFTDM are each former affiliates of all Debtors except Samson Resources Corporation ("SRC") and former affiliates of at least six of the seven Non-Debtor Subsidiaries.  Both therefore fit within the definition of "Released Party."

Preferred Interests, and (ii) prior to the 2011 Acquisition, Samson Exploration and Samson Offshore were under the control of Debtors Resources and SHI.  *See generally*, SUF ¶¶ 17-22. The Released Defendants are therefore entitled to summary judgment on all remaining counts of the Complaint.

***The Prior Transferee Motion***.  In 2018, Defendant Stacy Schusterman moved for summary judgment on the basis that she was not a direct or subsequent transferee of any transfer made by a Debtor.  Docket No. 48, 49.  While the Court never ruled expressly on that motion, in light of its other rulings it is fair to surmise that the Court thought it prudent to address the transferee issue only after discovery.  Along with the other Non-Transferee Defendants, Stacy Schusterman now seeks relief with respect to all remaining counts of the Complaint (Counts I, III and V), for the simple reason that no defendant in this case was a transferee (direct or indirect), other than Samson Energy and SIC's three former shareholders.  As set out in the 2022 Phillips Declaration, there is no dispute that the Non-Transferee Defendants, which include Stacy Schusterman, Lynn Schusterman, and SFT, were neither direct nor subsequent transferees of the Cash Transfers or the GC/OS Transfers.  *See* SUF ¶¶ 24, 35-47.

***Trustee Defendants.***  Two of the three trust defendants (Stacy Family Delaware Trust and the Schusterman 2008 Delaware Trust) were dismissed in the Release Opinion.  The third (SFT) seeks relief now, as it received no transfer.  With no viable claims against any of these trusts, each of the Trustee Defendants should also be dismissed.

## ARGUMENT

The Plan's release language has already been legally construed.  The only issues left open by the Release Opinion were factual, and the discovery record has closed them.  The Released Defendants are entitled to judgment as a matter of law.  *See* Section I; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment is appropriate when the movant shows

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); Release Opinion, 590 B.R. at 648.  The completion of discovery also leaves the Trustee empty-handed as to the Non-Transferee Defendants because there is no evidence that any Debtor property was ever transferred to any defendant other than the three selling shareholders and Samson Energy.  *See* Section II; *Celotex*, 477 U.S. at 325 ("the burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case."); *Riverside Acquisition Grp. LLC v. Vertis Holdings, Inc. (In re Vertis Holdings, Inc.)*, 536 B.R. 589, 632 (Bankr. D. Del. 2015) (same).  Finally, there can be no claim against the individual defendants named in their capacities as trustees of Trust Defendants that have already received or are now entitled to summary judgment.  *See* Section III.

## I.      THE PLAN RELEASE BARS PLAINTIFF'S CLAIMS AGAINST THE RELEASED DEFENDANTS

### A.      No Defendant Other than the Foundation has ever held Preferred Interests.

Neither SFTDM nor ST 2008 – nor any other defendant other than the Foundation – ever received or held any Preferred Interests.  The Foundation held the Preferred Interests at all times until they were cancelled.  SUF ¶¶ 12-14.

The Foundation's sole ownership of the Preferred Interests was no secret to the Plan's draftspersons.  Long before the release language was drafted, the Foundation publicly disclosed its sole ownership of the Preferred Interests.  It did so in compliance with a Court order, *see* Bankr. Docket No. 189, by filing a public declaration declaring that the Foundation, as of October 20, 2015, held all of the Preferred Interests.  *See* Bankr. Docket No. 245.  It confirmed its continued ownership of the Preferred Interests by declaration filed on October 5, 2017.  *See* Bankr. Docket No. 2900.

Pursuant to the Release Opinion, judgment should therefore enter in favor of SFTDM and ST 2008. Each is a former Debtor affiliate. Neither ever held Preferred Interests, and so each was released by the Plan. Release Opinion, 590 B.R. at 654 (denying summary judgment solely because the record was insufficiently developed with respect to whether SFTDM and ST 2008 held Preferred Interests).

**B.      Samson Exploration and Samson Offshore were under the control of Debtor entities and were therefore subsidiaries and/or affiliates of the Debtors.**

The Court held that Samson Exploration and Samson Offshore would each be a "Released Party" under the Plan if any Debtor "exercised a measure of control over each entity at some point in time." *Id.* at 653. Now that discovery is closed, there is no disputed issue of fact. Each was formerly controlled by one or more Debtors and, therefore, has been released.

Attached to the 2022 Phillips Declaration are "before and after" charts showing the corporate organization of the relevant entities before and after the sale. *See* 2022 Phillips Decl. ¶ 15 (authenticating charts) & Exs. C & D. The charts show the relevant corporate affiliations and equity ownership positions of Samson Exploration and Samson Offshore described below.

**1.      Samson Exploration was under the direct control of Debtors SHI and Resources.**

Samson Exploration is an LLC. Prior to its name change in 2011, it was known as Samson Lone Star, LLC ("Lone Star"). The following facts are undisputed:

- Debtors SHI and Resources were subsidiaries of Debtor SIC. SUF ¶ 16.

- Prior to the 2011 Acquisition, Debtor SHI owned 99% of the equity in Lone Star, while Debtor Resources held the remaining 1% interest. *Id.* ¶17.

- In 2011, SHI and Resources contributed their equity interests in Lone Star to Samson LS, LLC ("Samson LS"). *Id.* ¶ 18.

- Samson LS then assigned its entire membership interest in Lone Star to Samson Energy. *Id.* ¶ 19.

- Lone Star was later renamed Samson Exploration, LLC.  *Id.* ¶ 20.

In short, it is undisputed that Samson Exploration, formerly known as Lone Star, was controlled entirely by Debtors SHI and Resources, and that they were in turn controlled by Debtor SIC.  These Debtors held complete control of the corporate entity now known as Samson Exploration at all relevant times before the closing of the 2011 Acquisition.  Samson Exploration therefore meets the definition of an "affiliate," and is a Released Party under the Plan, entitled to summary judgment.  Release Opinion, 590 B.R. at 653 n.8.

### 2.    Samson Offshore was under the direct control of Debtor Resources.

The record is also undisputed that Samson Offshore qualifies as a Released Party, as a former Debtor affiliate:

- Prior to the 2011 Acquisition, Samson Offshore Company ("Samson OC") was wholly owned and controlled by Resources.  *See* SUF ¶ 21.

- In connection with the 2011 Acquisition, and while still controlled by Resources, Samson OC was converted to a limited liability company, Samson Offshore, LLC, *see Id.* ¶ 22.

- Resources then assigned its entire ownership interest in Samson Offshore to Samson Energy.  *Id.*

As a former wholly-owned subsidiary of Resources, Samson Offshore was wholly controlled by Debtors Resources and SIC.  No evidence in the record refutes this fact.  Samson Offshore therefore meets the definition of an "affiliate," and is a Released Party under the Plan, entitled to summary judgment.  Release Opinion, 590 B.R. at 653 n.8.

## II.    THE NON-TRANSFEREE DEFENDANTS WERE NEVER TRANSFEREES OF DEBTOR PROPERTY

In order to establish a claim against a Non-Transferee Defendant on any of the remaining counts of the Complaint, the Trustee must prove that it was an initial or subsequent transferee of property from one of the two challenged transfers: the Cash Transfers or the GC/OS Transfers.

With discovery closed, the Trustee cannot make this case against the Non-Transferee Defendants

– Samson Offshore, Samson Exploration, Stacy Schusterman, Lynn Schusterman, and SFT.

### A.    Count I: The Cash Transfers

#### 1.    The Non-Transferee Defendants are not "initial transferees" or "persons for whose benefit an initial transfer was made" under section 550(a)(1).

Section 550 of the Bankruptcy Code governs who may be liable for a fraudulent transfer.

Where a case is proved, the trustee may recover from (i) the initial transferee, (ii) "the entity for

whose benefit the [initial] transfer was made," or (iii) any immediate or mediate transferee of a

target in category (i) or (ii).  11 U.S.C. § 550(a)(1), (2).

It is undisputed that the selling shareholders (SFTDM, ST 2008, and Foundation) were

the only initial transferees of the Cash Transfers.  SUF ¶ 37.

The second category of potential targets includes entities "for whose benefit such

transfer[s] [were] made" under section 550(a)(1).  No defendant (except the selling shareholders

themselves) fits that description.  Liability under this clause requires that the plaintiff show that

the defendant received an actual, quantifiable, and accessible benefit *from the initial transfer*.

*See Halperin v. Moreno (In re Green Field Energy Servs.)*, 2018 Bankr. LEXIS 517, at *3-4

(Bankr. D. Del. Feb. 27, 2018) (the benefit "(1) . . . must actually have been received by the

beneficiary; (2) it must be quantifiable; and (3) it must be accessible to the beneficiary.")

(quoting *Baldi v. Lynch (In re McCook Metals, LLC)*, 319 B.R. 570, 590-591 (Bankr. N.D. Ill.

2005)),[17] *and Christy v. Alexander & Alexander Inc. (In re Finley, Kumble, Wagner, Heine,*

---

[17]    The *McCook* court notes that the benefit must *actually* have been received by the beneficiary – *not just intended*.  319 B.R. at 591.  The plaintiff must also identify "a particularized quantifiable benefit" received by the beneficiary.  *Id.* at 592 ("the 'traditional limitation' of transfer beneficiary status [is] to situations of 'a particularized quantifiable benefit,' rather than expanding the status 'to allow recovery for . . . unquantifiable and uncertain

*Underberg, Manley, Myerson & Casey),* 130 F.3d 52, 57 (2d Cir. 1997) ("such persons are liable

under (a)(1) *only in respect of such initial transfer*") (emphasis added).

Generally, this test is met only where (i) a third-party guarantor's liability is immediately

reduced or eliminated by the transfer, *see e.g., Reily v. Kapila (In re International Management*

*Association.)*, 399 F.3d 1288 (11th Cir. 2005); *Finley Kumble,* 130 F.3d at 57; *In re Bonded*

*Financial Services, Inc.,* 838 F.2d 890, 895 (7th Cir. 1988); (ii) a third-party's debt is reduced or

eliminated by the transfer, *see e.g., Merrill v. Dietz (In re Universal Clearing House Co.)*, 62

B.R. 118, 127 (D. Utah 1986); or (iii) an under-secured junior creditor's position is immediately

improved by the debtor's pay-down of senior debt, *see e.g., Gladstone v. Bank of America (In re*

*Vassau)*, 499 B.R. 864 (Bankr. S.D. Cal. 2013). *See also*, 5 COLLIER ON BANKRUPTCY

¶ 550.02[4] (16th ed. 2022).

It is settled that section 550(a)(1) does not impose "entity for whose benefit the transfer

was made" liability upon a defendant merely because it is a direct or indirect equity holder of an

initial transferee.[18] Equity ownership constitutes only an indirect benefit, rendering it an

---

benefits[.]'"). And even where a quantifiable benefit is actually received, the alleged
beneficiary must have been able to access it:

> For example, [if] an insolvent debtor [transfers] property to a corporation that he
> controls, but that also has minority shareholders[,] . . . a fraudulent transfer benefits
> those shareholders in a quantifiable fashion-a share of the value of the transferred
> property proportionate to their share of the corporation's equity. However, without
> control of the corporation, they may have no access to this benefit. . . . [And] if the
> corporation becomes insolvent, and *if it made no distribution to the minority*
> *shareholders subsequent to the fraudulent transfer*, they would never have had
> access to the benefit they received, and there would be no basis to require
> disgorgement of them.

*Id.*

[18] *See, e.g., Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 266 (5th Cir. 2016) (shareholder not
liable as beneficiary of initial transfer to corporation); *Terry v. Meredith (In re Stephen S.*
*Meredith, CPA, P.C.)*, 527 F.3d 372, 376 (4th Cir. 2008) (ownership of a corporation does

insufficient basis on which to find liability under section 550(a)(1).  *See Bodenstein v. Univ. of N. Iowa (In re Peregrine Fin. Grp, Inc.)*, 589 B.R. 360, 380 (Bankr. N.D. Ill. 2018) ("The entity must benefit from the transfer directly, not indirectly, as soon as the transfer is made."); *see also In re Dreier LLP*, 452 B.R. 451, 466-67 (Bankr. S.D.N.Y 2011) ("Incidental, unquantifiable, or remote allegations of benefit are not sufficient;" entity that may have received funds, in the form of fees or subsequent transfers, from fraudulent transfers was not an entity for whose benefit the transfers were made because any benefit was remote or incidental).

Nor is it enough that a defendant *stands to benefit* from a transfer by virtue of its position with respect to the initial transferee.  The defendant must have received an actual benefit.  *See e.g., Halperin v. Moreno (In re Green Field Energy Servs.)*, 594 B.R. 239, 288 (Bankr. D. Del. 2018) (trustee did not meet his burden on the first element of the benefit test; although defendant was the manager and also held direct and indirect ownership interests in the transferees, there was no evidence that he even drew a salary, dividend or distribution from them); *Peregrine*, 589 B.R. at 381 (defendant could not be considered as transfer beneficiary "if it will get the benefit of the funds sometime later. . . . [or] had only the right to benefit from the funds in the future."). Where the transferee is a corporate entity, "control of [the] entity is not enough to show access to the benefit.  The party must show that there was actual access.  [Therefore] [p]ercentage interests

---

not equate to benefit); *In re Int'l Mgmt. Assoc.*, 399 F.3d at 1293 (control is not a "tangible or a quantifiable benefit"); *Gellert v. Coltec Indus. (In re Crucible Materials Corp.)*, 2012 Bankr. LEXIS 5102, at *19 (Bankr. D. Del. Oct. 31, 2012) ("[t]he enjoyment of some indirect, unquantifiable benefit, however, is not sufficient to establish liability under section 550(a)"); *Dietz v. Spangenberg*, No. CIV. 11-2600 ADM/JJG, 2013 WL 4610530, at *18 (D. Minn. Aug. 29, 2013) (same); *Sher v. SAF Fin., Inc.*, Civ. No. RDB 10-1895, 2011 U.S. Dist. LEXIS 116967, at *8-9 (D. Md. Oct. 11, 2011) (same); *Schechter v. 5841 Bldg. Corp. (In re Hansen)*, 341 B.R. 638, 645-46 (Bankr. N.D. Ill. 2006) (discussed and often cited in listed cases); *Peterson v. Hoffmann (In re Delta Phones, Inc.)*, No. 04 B 823, 2005 WL 3542667, at *6 n.4 (Bankr. N.D. Ill. Dec. 23, 2005) (shareholder not liable for transfer to corporation).

and [entitlement to] annual payments are not enough to show, that [a defendant] had access to the transfers." *Halperin*, 594 B.R. at 288 (citation and quotation marks omitted).

The Non-Transferee Defendants were neither initial transferees nor even owners of the initial transferees.  In short, there is no evidence in the record that Stacy Schusterman, Lynn Schusterman, SFT, Samson Offshore or Samson Exploration (or indeed any defendant other than the selling shareholders themselves) received an actual, quantifiable benefit from, or had access to, the Cash Transfers.  No one's debt or guaranty was extinguished.  There is therefore no basis for imposing "entity for whose benefit the transfer was made" liability on any Non-Transferee Defendant.

### 2. The Non-Transferee Defendants are not subsequent transferees of the Cash Transfers under section 550(a)(2).

Section 550(a)(2) imposes liability on a subsequent transferee (an "immediate or mediate transferee" of an initial transferee) of a fraudulently transferred asset.  The Bankruptcy Code does not define the terms "immediate transferee" or "mediate transferees," but courts have settled on one main requirement: dominion or control over the property transferred.  *See, e.g., Bonded*, 838 F.2d at 893 (the "minimum requirement of status as a 'transferee' is dominion over the money or other asset, [or] the right to put the money to one's own purposes."); *Dembsky v. Frommer, Lawrence & Haug, LLP (In re Lambertson Truex, LLC)*, 458 B.R. 155, 158 (Bankr. D. Del. 2011) (same).

The Court need not address any of the questions that sometimes complicate subsequent transfer analysis, such as timing and asset commingling.  The simple fact is that neither Stacy Schusterman, Lynn Schusterman, SFT, Samson Offshore, nor Samson Exploration *ever received* a subsequent transfer from of any of the selling shareholders.

- As a charitable organization, the Foundation has made distributions only to advance its charitable purposes.  Since 2011, the Foundation has distributed

approximately $1.5 billion towards such purposes.  SUF ¶ 38.  It has made no transfers to any of the defendants.  *Id.* ¶ 39.

- ST 2008 used the proceeds of the Cash Transfers to fund its investments in commercial real estate, stock/bonds and private equity, make charitable donations, and, as a member of Samson Energy, to make equity contributions and loans to Samson Energy. *Id.* ¶ 40.  ST 2008 also made distributions to its sole member, Schusterman 2008 Delaware Trust for tax purposes only.  *Id.* ¶ 41.  Since 2011, no distributions have been made to Schusterman 2008 Delaware Trust for the purpose of funding any distributions to the trust's beneficiaries. *Id.* ¶ 42.  ST 2008 has not otherwise made any transfers to any of the defendants since the 2011 Acquisition.  *Id.* ¶ 43.

- SFTDM used the proceeds of the Cash Transfers in part to fund equity contributions and make loans to Samson Energy.  *Id.* ¶ 44.  SFTDM also made distributions to its sole member, Stacy Family Delaware Trust, for tax purposes, and to pay legal fees.  *Id*. ¶ 45.  SFTDM has not made any distributions to Stacy Family Delaware Trust for the purpose of distribution to its beneficiaries since 2011.  *Id.* ¶ 46.  SFTDM has not otherwise made any transfers to any of the defendants since the 2011 Acquisition.  *Id.* ¶ 47.

The Trustee cannot muster a *prima facie* case that Stacy Schusterman, Lynn Schusterman, SFT, Samson Offshore or Samson Exploration fall within any of the three section 550 tests with respect to the Cash Transfers.  As it is his burden to do so, *see Halperin,* 594 B.R. at 287, 289, and fact discovery has closed and yielded no evidence to meet this burden, the Non-Transferee Defendants are entitled to summary judgment under *Celotex* and its progeny with respect to the Cash Transfers.

### B.    Count III: The GC/OS Transfers

#### 1.    The Non-Transferee Defendants are not "initial transferees" or "persons for whose benefit an initial transfer was made" under section 550(a)(1), with respect to the GC/OS Transfers.

It is undisputed that Samson Energy was the only direct transferee of the GC/OS Transfers.  SUF ¶ 24.  There is no evidence in the record that any of the GC/OS Assets were initially transferred by Samson Energy to any other defendant.

Neither were the GC/OS Transfers made *for the benefit of* the Non-Transferee

Defendants.  There is no indication in the record that SFT, Stacy Schusterman, Lynn

Schusterman, Samson Exploration or Samson Offshore received or had access to any

quantifiable benefit from the GC/OS Transfers.  Those transfers did not extinguish any

underlying liability (such as a joint obligation or guaranty) held by any of them.

None of the Non-Transferee Defendants was even an equity holder of the initial

transferee, Samson Energy, at the time of the 2011 Acquisition, and the only defendant ever to

become one later – SFT – did so in 2015 by contributing fresh capital.  SUF ¶ 27.  When Samson

Energy received the GC/OS Transfers, its equity interests were held exclusively by SFTDM.  *Id.*

¶ 25.  The sole member of SFTDM was the Stacy Family Delaware Trust.  *Id.* ¶ 2.  There exists

no predicate for any indirect benefit to the Non-Transferee Defendants as a result of the GC/OS

Transfers, and the Court can now so rule.  *See Dreier*, 452 B.R. at 466-67.

### 2.    The Non-Transferee Defendants are not subsequent transferees of the GC/OS Transfers.

None of the Non-Transferee Defendants has ever been a subsequent transferee of the

property transferred to Samson Energy by means of the GC/OS Transfers, which largely

consisted of membership interests in operating LLCs.  *See* SUF ¶¶ 17-22.  In the decade since

2011, Samson Energy's subsidiaries have sold most of their operating assets to third parties who

paid consideration for them in the ordinary course, and are not defendants here.  *Id.* ¶ 35.

Samson Energy has not transferred the membership interests themselves.    Samson Energy's

operating subsidiaries used the proceeds of those sales to acquire additional assets in the ordinary

course, and to generate dividends to Samson Energy.  The latter permitted Samson Energy to

repay loans, and also, beginning in 2016, to make a partial return to its members of the new cash

equity they contributed to Samson Energy in and after 2012.  *Id.* ¶ 36.  Equity distributions did

not begin until 2016, and have never come close to restoring to equity holders their contributions of fresh capital. *See id.* ¶¶ 30-32. There is no evidence in the record that the Non-Transferee Defendants ever received a dividend or equity distribution from Samson Energy or any of its subsidiaries. *Id.* ¶ 36.

SFT acquired a 35% interest in Samson Energy for a $152,787,600 equity contribution in late 2015. SUF ¶ 27. SFT also loaned approximately $22.2 million to Samson Energy in or around December 2015, and then transferred its membership interest to TFS in or around January 2016. *Id*. ¶¶ 28, 34. Samson Energy repaid the loan from SFT in or around March 2017. *Id*. ¶ 34. SFT has not otherwise transferred property to or received any property from Samson Energy. *Id*. Accordingly, there is no indication in the record that SFT ever received any GC/OS Asset or proceeds thereof from Samson Energy.

From 2011 through the date of this Motion, Samson Energy has received approximately $1.25 billion in cash equity infusions from its members to support business operations. SUF ¶ 30. Prior to October 2016, the members in Samson Energy, including SFT during the short time it was a member, received no return on their investment. *Id.* ¶ 31. Since October 2016, Samson Energy has returned capital to its members – SFTDM, ST 2008, and TFS – in the aggregate amount of approximately $573 million. *Id.* ¶ 32. Accordingly, the net equity capital contributed (by all equity-holders) to Samson Energy stands at more than $677 million. Over more than a decade since its formation, Samson Energy has been a net *consumer* of new equity investments, rather than a net distributor of its properties.

Thus, with regard to the GC/OS Transfers, no defendant other than Samson Energy could come within section 550 as a "transferee."

Because the Non-Transferee Defendants cannot be liable under section 550 with respect to the Cash Transfers or the GC/OS Transfers, summary judgment should enter in their favor on all counts of the Complaint. Section 550 is an alternative basis for granting summary judgment to all defendants save Samson Energy itself, and the selling shareholders.[19]

### III. AS NO VIABLE CLAIM REMAINS AGAINST ANY TRUST, SUMMARY JUDGMENT SHOULD ENTER IN FAVOR OF THE TRUSTEE DEFENDANTS.

Defendant C. Philip Tholen was sued solely in his capacity as co-trustee of the Schusterman 2008 Delaware Trust. Compl. ¶ 10. The Court entered summary judgment in favor of the Schusterman 2008 Delaware Trust in its Release Opinion. 590 B.R. at 655. Accordingly, summary judgment should also enter in favor of Mr. Tholen.

Wilmington Savings was sued in its capacity as co-trustee of former defendants Schusterman 2008 Delaware Trust and Stacy Family Delaware Trust, and of Moving Defendant SFT. Compl. ¶¶ 9-10. At the time of the 2011 Acquisition, Wilmington Savings served as co-trustee to the Schusterman 2008 Delaware Trust and the Stacy Family Delaware Trust only. SUF ¶¶ 3, 5. It was never a trustee of SFT. *Id.* ¶ 8. Wilmington Savings is therefore entitled to summary judgment, as judgment has already been entered for the Schusterman 2008 Delaware Trust and the Stacy Family Delaware Trust as Released Parties. *See supra*, at 7; *see also* Release Opinion, 590 B.R. at 655.

Stacy Schusterman is named in her capacity as co-trustee of defendants Schusterman 2008 Delaware Trust and Stacy Family Delaware Trust, Compl. ¶¶ 9-10, while Lynn

---

[19]    SFT and Stacy Schusterman are named in all remaining counts (I (Cash Transfers), III (GC/OS Transfers), and V (recovery of transfers pursuant to Section 550 of the Code). Samson Exploration and Samson Offshore are named in Counts III and V. Lynn Schusterman is named only in Count V. Stacy and Lynn are also named in their capacities as trustees, which is addressed in the following section.

Schusterman was named in her capacity as co-trustee of the Stacy Family Delaware Trust.  *Id.*

Each of these trusts already received summary judgment.  *See supra*, at 7.  Accordingly, Stacy

Schusterman and Lynn Schusterman should receive judgment in their favor to the extent they are

named in their capacity as trustees of these released entities.

Stacy Schusterman and Lynn Schusterman are also named in their capacities as Trustees

of SFT.  As shown above, SFT itself is entitled to summary judgment, and so they too are

entitled to summary judgment in their capacity as trustees of SFT.


*[Remainder of page intentionally left blank]*

## **CONCLUSION**

For the foregoing reasons, the Motion should be granted.

March 11, 2022                                       Respectfully submitted,


                                                    /s/ *Michael R. Nestor*
David M. Stern (admitted *pro hac vice*)            Michael R. Nestor (No. 3526)
Robert J. Pfister (admitted *pro hac vice*)         Michael S. Neiburg (No. 5275)
Samuel M. Kidder (admitted *pro hac vice*)          **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
**KTBS LAW LLP, F/K/A KLEE, TUCHIN,**                Rodney Square, 1000 North King Street
**BOGDANOFF & STERN LLP**                           Wilmington, DE  19801
1801 Century Park East, 26th Floor                  (302) 571-6699
Los Angeles, California 90067                        mnestor@ycst.com
(310) 407-4000

                                                    Sabin Willett (admitted *pro hac vice*)
                                                    Andrew J. Gallo (admitted *pro hac vice*)
                                                    **MORGAN, LEWIS & BOCKIUS LLP**
                                                    One Federal Street
                                                    Boston, MA  02110
                                                    (617) 341-7700


                    *Counsel for the Moving Defendants*