IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SAMSON RESOURCES CORPORATION, *et al.*,<br><br>Debtor. | Chapter 11<br><br>Case No. 15-11934 (BLS)<br>(Jointly Administered) |
| PETER KRAVITZ, as Settlement Trustee of and on behalf of the SAMSON SETTLEMENT TRUST,<br><br>Plaintiff,<br><br>v.<br><br>SAMSON ENERGY COMPANY, LLC, *et al.*<br><br>Defendants | Adv. Pro. No. 17-51524 (BLS) |

**DECLARATION OF DREW PHILLIPS IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT AS TO CERTAIN DEFENDANTS**

Pursuant to 28 U.S.C. § 1746, I, Drew Phillips, hereby declare:

1)     I submit this declaration in support of the Renewed Motion for Summary Judgement as to Certain Defendants (the "Renewed Motion") submitted by SFT (Delaware) Management, LLC ("SFTDM"), ST 2008 (Delaware) Management, LLC ("ST 2008"), Samson Exploration, LLC ("Samson Exploration"), Samson Offshore, LLC ("Samson Offshore"), Stacy Family Trust ("SFT"), Stacy Schusterman, Lynn Schusterman, C. Philip Tholen, and Wilmington Savings Fund Society, FSB ("Wilmington Savings") (collectively, the "Moving Defendants"), and filed contemporaneously herewith.

2)     I make this declaration based on personal knowledge.

3)    At the time of the 2011 Acquisition, I was employed by Samson Investment Company ("SIC") as Vice-President of Tax and Payroll. As a former officer of SIC, I have personal knowledge of and familiarity with the corporate entities which formed the corporate structure of SIC's business, SIC's equity interests, and the 2011 Acquisition and the related transactions which are the subject of this litigation.

4)    In January 2012, I began employment at Samson Energy Company, LLC ("Samson Energy") as the Vice-President of Accounting, Reporting and Tax, and later as Senior Vice President of Accounting, Reporting and Tax. I became Chief Financial Officer of Samson Energy in 2019 and still hold that position.

5)    I am also currently the Chief Financial Officer of Moving Defendant Samson Exploration, President of Moving Defendant Samson Offshore, and a Manager of Moving Defendants SFTDM and ST 2008. I am also an employee of and Chief Financial Officer for Schusterman Interests, LLC ("SIL").

I. **SIC's Ownership Pre-2011 Acquisition**

6) Prior to the 2011 Acquisition, the shares of debtor SIC were held by SFTDM, ST 2008 and the Charles and Lynn Schusterman Family Foundation (the Foundation," and together with SFTDM and ST 2008, the "Selling Shareholders.").

7) At the time of the 2011 Acquisition, SFTDM was wholly owned by its sole member, Stacy Family Delaware Trust. Stacy Schusterman, Lynn Schusterman, and Wilmington Savings served as the co-trustees of Stacy Family Delaware Trust.

8) At the same time, ST 2008 was wholly owned by its sole member, Schusterman 2008 Delaware Trust. Stacy Schusterman, C. Philip Tholen, and Wilmington Savings served as the co-trustees of Schusterman 2008 Delaware Trust.

9) SFT is a former shareholder of SIC (from 2006-2010). At the time of the 2011 Acquisition, Stacy Schusterman and Lynn Schusterman served as the co-trustees of SFT. Wilmington Savings has never served as a co-trustee of SFT.

II. **The 2011 Acquisition**

10) Pursuant to a November 22, 2011 stock purchase agreement ("SPA"), the Selling Shareholders sold a portion of their respective shares of SIC to Debtor Samson Resources Corporation ("SRC") in December 2011 (the "2011 Acquisition"). Also pursuant to the SPA, the remaining portion of the Selling Shareholders' shares were redeemed by SIC. Attached hereto as **Exhibit A** is a true and correct copy of the SPA (with select sections of the Disclosure Schedule to the SPA).

11) Attached hereto as **Exhibit B** is the Funds Flow Memorandum prepared in connection with the closing of the 2011 Acquisition, which, to the best of my knowledge, is

accurate regarding the transfer of funds in connection with the 2011 Acquisition. As the Funds Flow Memorandum establishes, the three Selling Shareholders were the only defendants in this litigation that received transfers of cash in connection with the 2011 Acquisition. No other defendant received any transfer of cash at the closing.

12) At the closing of the 2011 Acquisition, as part of the purchase price, the Foundation also received $180 million in preferred shares of SRC, which are defined as the "Preferred Interests" in Article 1.A.115 of the "Global Settlement Joint Chapter 11 Plan" filed by SRC and affiliates and confirmed in 2017. [Bankr. Docket No. 2009].

13) None of the other defendants in this action, including none of the other Selling Shareholders, has ever received or held any of the Preferred Interests.

14) The entirety of the Preferred Interests received by the Foundation were held by the Foundation until they were cancelled.

### III. Affiliations of Samson Offshore Company and Samson Exploration

15) Attached hereto as **Exhibits C** and **D** are two charts that accurately show, respectively, the affiliations among the Moving Defendant entities and the Debtors before and immediately following the 2011 Acquisition.

16) As outlined in Exhibit C, prior to the closing of the 2011 Acquisition, SIC was the parent company of a number of entities, including co-debtors Samson Holdings, Inc. ("SHI") and

Samson Resources Company ("Resources") (not to be confused with Samson Resources Corporation which is referred to herein as "SRC").

17) Attached as **Exhibit E** are true and accurate copies of 7 relevant pages from the Disclosure Schedule to the SPA (the "Disclosure Schedule"). These pages accurately describe certain defendant's relations to certain Debtors at the time the SPA was executed.

18) As detailed on the Disclosure Schedule, Resources and SHI held the membership interests (99% and 1%, respectively) in Samson Lone Star, LLC ("Lone Star"). Resources also separately held 100% interest in Samson Offshore Company ("Samson OC").

19) The parties to the SPA agreed that certain assets and liabilities of SIC's Offshore and Gulf Coast Divisions (together with certain other miscellaneous corporate assets, the "GC/OS Assets"), including the equity interests in Samson OC and Lone Star would be excluded from the 2011 Acquisition, and instead transferred to Samson Energy (the "GC/OS Transfers").

20) The following transactions are among those that took place prior to closing the 2011 Acquisition in order to effectuate the GC/OS Transfers.

    a) Samson OC was converted to a limited liability company, Samson Offshore, LLC.

    b) Resources then assigned its entire equity interest in Samson Offshore, LLC to Samson Energy. A true and correct copy of the Assignment of Membership Interest by Resources, dated December 19, 2011, is attached hereto as **Exhibit F.**

    c) Pursuant to the SPA, Resources and SHI contributed their equity interests in Lone Star to Samson LS, LLC ("Samson LS"). Samson LS then assigned its

        entire equity interest in Lone Star to Samson Energy. A true and correct copy of the Assignment of Membership Interest by Samson LS, LLC, dated December 19, 2011, attached hereto as **Exhibit G**.

    d) Lone Star was later renamed Samson Exploration, LLC.

## IV. Samson Energy and the GC/OS Assets

21) Samson Energy is a limited liability company organized under Delaware law. It was formed on November 29, 2011, to acquire the GC/OS Assets. Samson Energy was the sole transferee of the GC/OS Assets at the time of the 2011 Acquisition. It, along with SIL, now provides strategic guidance, and administrative, accounting, IT and legal support to its operating subsidiaries which hold certain of the GC/OS Assets.

22) In addition, Samson Energy regularly performed accounting services for SFTDM, ST 2008, the Foundation, SFT, Stacy Family Delaware Trust, and Schusterman 2008 Delaware Trust, functions that are now performed by SIL. In my capacity as an employee of both Samson Energy and SIL, I have had personal involvement in and knowledge of these accounting services since 2011.

23) At Samson Energy's formation in 2011, SFTDM was the sole member of Samson Energy and owned all the equity in Samson Energy after making an initial capital contribution of $800 million in cash. In 2012, ST 2008 was admitted as a minority member (in connection with this transaction, Samson Energy returned $487,666 of capital to SFTDM, and received a contribution of an identical amount from ST 2008).

24) SFT acquired a 35% interest in Samson Energy in exchange for a $152,787,600 equity contribution in or around December 2015. SFT also loaned approximately $22.2 million

to Samson Energy in or around December 2015. In or around January 2016, SFT transferred its membership interest in Samson Energy to its subsidiary, TFS Services, LLC ("TFS"). Samson Energy repaid the loan from SFT in or around March 2017. SFT has not otherwise transferred property to or received any property from Samson Energy.

25) Today, the three LLCs – SFTDM, ST 2008, and TFS – hold all of the membership interests in Samson Energy. Neither Stacy Schusterman nor Lynn Schusterman has ever personally held any membership interests in Samson Energy.

26) From 2011 through the date of this declaration, Samson Energy has received approximately $1.25 billion in cash equity infusions from its members to support business operations. Samson Energy has also received additional funds in the form of loans from insiders, which it has repaid. Within the ordinary course of business since 2011, Samson Energy and its subsidiaries have also sold almost all of the GC/OS Assets to third parties (none of whom is a defendant in this action). The proceeds of these sales were used to acquire additional assets in the ordinary course, to repay loans, and to also make partial returns to Samson Energy's members.

27) Prior to October 2016, the members in Samson Energy received no return on their investment. From October 2016 through the date of this declaration, Samson Energy has returned capital to its members – SFTDM, ST 2008, and TFS – in the aggregate amount of approximately $573 million.

28) Except for the partial returns of capital, loan repayments, and the sale of assets to third parties described above in paragraphs 26-27, neither Samson Energy nor its subsidiaries have made dividends or equity distributions, or transferred any of the GC/OS Assets or proceeds thereof, to any other person or entity.

**V.    The Selling Shareholders and the Cash Transfers**

29)    <u>The Foundation</u>.  The Foundation is a private non-operating 501(c)(3) organization. As a charitable organization, the Foundation has only made distributions to further its charitable purposes.  Since 2011, the Foundation has distributed approximately $1.5 billion towards such charitable purposes.  It has made no transfers to any of the defendants.

30)    <u>ST 2008</u>.  ST 2008 used the proceeds of the Cash Transfers to fund its investments in commercial real estate, stock/bonds and private equity, make charitable donations, and, as a member of Samson Energy, to make equity contributions and loans to Samson Energy.  ST 2008 also made distributions to Schusterman 2008 Delaware Trust for tax purposes.  ST 2008 has not made distributions to Schusterman 2008 Delaware Trust for the purpose of funding any distributions to its beneficiaries since 2011.  ST 2008 has not otherwise made any transfers to any of the defendants since the 2011 Acquisition.

31)    <u>SFTDM</u>.  SFTDM has used the proceeds of the Cash Transfers in part to fund equity contributions and make loans to Samson Energy.  SFTDM also made distributions to Stacy Family Delaware Trust for tax purposes and to pay legal fees.  SFTDM has not made any distributions to Stacy Family Delaware Trust for the purpose of distribution to its beneficiaries since 2011.  SFTDM has not otherwise made any transfers to any of the defendants since the 2011 Acquisition.

I declare under penalty of perjury this 11th day of March, 2022, that the foregoing is true and correct.

_Drew S. Phillips_

Drew Phillips.