IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>SAMSON RESOURCES CORPORATION, *et al.*,<br><br>        Debtors. | Chapter 11<br><br>Case No. 15-11934 (BLS)<br>(Jointly Administered) |
| PETER KRAVITZ, as Settlement Trustee of and on behalf of the SAMSON SETTLEMENT TRUST,<br><br>        Plaintiff,<br><br>v.<br><br>SAMSON ENERGY COMPANY, LLC, *et al.*<br><br>        Defendants. | Adv. Pro. No. 17-51524 (BLS) |

## REPLY IN SUPPORT OF SAMSON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER BANKRUPTCY CODE SECTION 546(e)

David M. Stern (admitted *pro hac vice*)
Robert J. Pfister (admitted *pro hac vice*)
Samuel M. Kidder (admitted *pro hac vice*)
**KTBS LAW LLP, F/K/A KLEE, TUCHIN, BOGDANOFF & STERN LLP**
1801 Century Park East, 26th Floor
Los Angeles, California 90067
(310) 407-4000

Sabin Willett (admitted *pro hac vice)*
Andrew J. Gallo (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, Massachusetts 02110
(617) 341-7700

Michael R. Nestor (No. 3526)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
(302) 571-6699

Dated:  April 29, 2022

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................4

      A.     The Trustee's Interpretation is Contrary to the Text of the Bankruptcy Code .................................................................................................................4

      B.     The Trustee's Analogies to Other "Statuses" are Inapposite ...................................6

      C.     The Trustee's Policy Arguments Are Irrelevant and Unpersuasive ........................9

III.    CONCLUSION.....................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731 (2020).................................................................................6, 9

*Castro v. United States Dep't of Homeland Sec.*,
835 F.3d 422 (3d Cir. 2016)..................................................................................6

*Estate of Cowart v. Nicklos Drilling Co.*,
505 U.S. 469 (1992)..................................................................................8

*Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*,
946 F.3d 66 (2d Cir. 2019).......................................................................5, 9, 10

*In re KB Toys Inc.*,
736 F.3d 247 (3d Cir. 2013)..................................................................................3

*Kravitz v. Samson Energy Co. (In re Samson Res. Corp.)*,
625 B.R. 291 (Bankr. D. Del. 2020) ............................................................ *passim*

*Sebelius v. Auburn Reg'l Med. Ctr.*,
568 U.S. 145 (2013)..................................................................................5

*Sexton v. Dreyfus*,
219 U.S. 339 (1911)..................................................................................10

*T Mobile Ne. LLC v. City of Wilmington*,
913 F.3d 311 (3d Cir. 2019)..................................................................................5

*In re Trump Entm't Resorts*,
810 F.3d 161 (3d Cir. 2016)..................................................................................3

*Williams v. Morgan Stanley Capital Grp. (In re Olympic Nat. Gas Co.)*,
294 F.3d 737 (5th Cir. 2002) ..................................................................................10

**Statutes**

11 U.S.C. § 101(22A) ............................................................ *passim*

11 U.S.C. § 362(b)(6) ..................................................................................7, 8

11 U.S.C. § 546(e) ............................................................ *passim*

11 U.S.C. § 547(b)(4)(B) ..................................................................................5, 7

11 U.S.C. § 548(a)(1)(B)(ii)(IV) ..................................................................................6

The Defendants[1] submit this reply in response to the *Samson Settlement Trustee's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment Under Bankruptcy Code Section 546(e)* [Docket No. 354] (the "Opposition") and in further support of the *Samson Defendants' Motion for Partial Summary Judgment Under Bankruptcy Code Section 546(e)* [Docket No. 346] (the "Motion").

## I.  INTRODUCTION

Following more than two years of motion practice, discovery, and dueling expert reports, the scope of the dispute regarding Defendants' section 546(e) defense is now exceedingly narrow.  Although the Trustee goes on at great length to propagandize about the strength of his fraudulent transfer case, whether the Trustee's case is strong or weak on the "merits"[2] is irrelevant to whether certain transfers are safe-harbored.  Reviewing the state of play, *as relevant to this Motion*:

- There is no longer any question whether a debtor itself can be a "financial participant" – the Court resolved that question in Defendants' favor in the Opinion.

- The Opposition confirms that the Trustee no longer disputes that Samson Investment held swap agreements with sufficient value as of the Petition Date to qualify as a financial participant under section 101(22A).[3]

---

[1]  Capitalized terms used but not defined herein have the meanings ascribed to them in the *Memorandum in Support of Samson Defendants' Motion for Partial Summary Judgment Under Bankruptcy Code Section 546(e)* [Docket No. 347] (the "Opening Memorandum").

[2]  Unsurprisingly, the Defendants have a very different view of the litigation than the Trustee, as previewed in the concurrently-filed reply in support of the Release and Non-Transferee MSJ.

[3]  *Compare* Opening Memorandum at 10 (Statement of Undisputed Fact No. 7: "As of the Petition Date, Samson Investment had gross mark-to-market positions in commodity swaps and commodity options of a value of $123,425,972." (citing Supp. Randolph Decl. ¶ 7)), *with* Opposition ¶ 28 (contending that there is a genuine issue of disputed fact only as to the value of Samson's hedge positions on the Transfer Date).  It is also undisputed that Samson Investment held sufficient swap agreements on August 31, 2015 (*i.e.*, a date within the 15-month period preceding the Petition Date),

- It is also undisputed that the relevant transfer (the Cash Redemption Transfer) was made "in connection with a securities contract" (the SPA).[4]

Given this narrowing of the facts and issues in dispute, application of sections 101(22A) and 546(e) to the facts of this case is a straightforward exercise involving only an issue of law. Samson Investment is a financial participant because it indisputably held swap agreements with a gross mark-to-market value in excess of $100 million as of the Petition Date. *See* 11 U.S.C. § 101(22A). It necessarily follows that any transfers "made by or to" it in connection with the SPA (an undisputed "securities contract") are safe-harbored under section 546(e).

Unable to dispute these facts, the Trustee pins his entire Opposition on a discrete question of law: whether section 546(e) contains a hidden requirement that the relevant entity have been a financial participant as of the date of the transfer. Specifically, the Trustee contends that this Court cannot grant the Motion because there are conflicting expert opinions as to whether Samson Investment met the statutory thresholds as of the Transfer Date.[5]

The Trustee is wrong (and, respectfully, it is not even a close question), for the following reasons:

*First*, and foremost, the Trustee's interpretation contravenes the plain language of the Bankruptcy Code. Section 101(22A) defines "financial participant" by reference to three specific measurement dates. As this Court previously observed:

---

an alternative measurement date for determining financial participant status. *Compare* Opening Memorandum at 10 (Statement of Undisputed Fact No. 8), *with* Opposition ¶ 28 (disputing only Mr. Randolph's calculations as of the Transfer Date).

[4]   *Compare* Opening Memorandum at 23-24 (explaining how all of the challenged transfers were made "in connection with" the SPA, which is a quintessential "securities contract"), *with* Opposition (no dispute as to this element of Defendants' section 546(e) defense).

[5]   The Opposition includes a lengthy argument regarding the expert dispute as to the value of Samson Investment's transactions as of the Transfer Date. *See* Opposition ¶¶ 9-13. Because Transfer Date values are irrelevant to the instant Motion, Defendants will not engage on this sideshow.

> The Trustee argues that the Samson Defendants must prove that Samson Investments had the agreements or transactions in the required amounts *on the date of the transfers at issue*. The language of *§ 101(22A) clearly sets forth three dates* for measuring the amounts of the agreements or transactions: (i) at the time the entity enters into an agreement or transaction, or (ii) the date of filing of the petition, or (iii) on any day during the 15-month period preceding the date of the filing of the petition. However, because the Samson Defendants argue that they had agreements or transactions in the requisite amount on the dates of the transfers, as well as on any of the dates in the statute, this issue appears moot.

Opinion, 625 B.R. at 302 n.37 (second emphasis added).

The plain language of the statute is the alpha and, in this case, the omega of the inquiry. *See id.* at 300 ("If the text is clear and unambiguous, [the] Court must simply apply it." (quoting *In re KB Toys Inc.*, 736 F.3d 247, 251 (3d Cir. 2013))). *See* Part II.A, *infra*.

*Second*, the Trustee's analogies to other "statuses" in the Bankruptcy Code ("insider" and "stockbroker") are inapposite. The definitions of "insider" and "stockbroker" are silent as to when such status should be measured. The definition of "financial participant," by contrast, contains express measurement dates. To measure financial participant status as of any date other than those set forth in the very definition of the term is contrary to both the text of the Code and basic logic. *See* Part II.B, *infra*.

*Third*, in a classic "last resort,"[6] the Trustee turns to legislative history and policy arguments. Even assuming, *arguendo*, such considerations were relevant (they are not, because the statute is plain on its face), they would not help the Trustee. As the Court previously noted, section 546(e) was "intended to minimize market disruptions caused by the avoidance of transfers made by debtors who were participants in the markets." Opinion, 625 B.R. at 301 n.36 (emphasis omitted). Considering that purpose, it is logical for the statute to measure the

---

[6]    *In re Trump Entm't Resorts*, 810 F.3d 161, 168 (3d Cir. 2016).

magnitude of an entity's transactions as of the petition date (rather than the transfer date), as any unwinding of the transfer (and associated "market disruptions") will necessarily occur after the petition date.  *See* Part II.C, *infra*.

At bottom, the theory espoused in the Opposition is akin to the Trustee's failed argument that a debtor cannot be a financial participant: the Trustee is dissatisfied with the plain language of the Bankruptcy Code and grasping for a way to avoid its consequences.  Just like the former argument, this one too should be rejected as contrary to "the plain text and structure of the Code[] …."  Opinion, 625 B.R. at 301.

## II. <u>ARGUMENT</u>

### A.    The Trustee's Interpretation is Contrary to the Text of the Bankruptcy Code

Although Bankruptcy Code subsections 101(22A) and 546(e) are lengthy and somewhat unwieldy, the portions relevant to this Motion – as narrowed by the Trustee's concessions – are straightforward.  Section 546(e) safe-harbors "transfer[s] made by or to … a financial participant … in connection with a securities contract."  Section 101(22A), in turn, defines "financial participant" and provides three measurement dates (listed in the disjunctive, so any one of the three will suffice) used to measure whether an entity has sufficient agreements or transactions to qualify.  Those three dates are "(i) at the time the entity enters into [a securities contract], or (ii) the date of filing of the petition, or (iii) on any day during the 15-month period preceding the date of the filing of the petition."  Opinion, 625 B.R. at 302 n.37.

It is no longer in dispute that Samson Investment had swap agreements in excess of the statute's $100 million gross mark-to-market value threshold on *two* relevant dates: the Petition Date and August 31, 2015 (*i.e.*, a date during the 15-months preceding the Petition Date).  Samson Investment is thus a "financial participant" pursuant to the plain language of section

101(22A), and any transfers "made by" it in connection with the SPA are safe-harbored under section 546(e).

Because he cannot dispute that Samson Investment had sufficient qualifying transactions to be a financial participant as of the Petition Date, the Trustee attempts to graft onto section 546(e) an additional temporal test for determining financial participant status. The Trustee reads section 546(e) to include an unwritten rule that the relevant entity must have been a financial participant as of the date on which the transfer was made, effectively rewriting section 546(e) to provide that only a "transfer made by or to … *an entity that was* a financial participant *at the time of the transfer*" is safe-harbored. *See, e.g.*, Opposition ¶ 17.

But that is clearly not what the statute says. Had Congress intended to embed such a qualifier in section 546(e), it easily could have done so. Indeed, the drafters of the Bankruptcy Code knew how to make the transfer date the relevant time for determining an entity's status. *See* 11 U.S.C. § 547(b)(4)(B) (extending the preferential transfer lookback period in cases where the relevant creditor was an insider "***at the time of such transfer***" (emphasis added)). That Congress did not use this readily available formulation in section 546(e) further confirms what is already clear from the plain text – that section 546(e) does not require that the entity in question have been a financial participant as of the transfer date.[7]

It makes sense that section 546(e) does not contain any temporal test for measuring financial participant status, because that work is done in section 101(22A). Section 101(22A)

---

[7]    *See, e.g.*, *T Mobile Ne. LLC v. City of Wilmington*, 913 F.3d 311, 321 (3d Cir. 2019) ("As the Supreme Court has recognized … Congress's use of certain language in one part of the statute and different language in another can indicate that different meanings were intended." (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 156 (2013) (internal quotation marks omitted))); *Deutsche Bank Tr. Co. Ams. v. Large Private Ben. Owners (In re Tribune Co. Fraudulent Conveyance Litig.)*, 946 F.3d 66, 79 n.10 (2d Cir. 2019) ("In addition, other subsections of Section 101 explicitly incorporate definitions from Section 761[.] … Thus, if Congress had intended to import Section 761(9)'s definition into Section 101(22), it clearly knew how (yet declined) to do so.").

contains detailed requirements for determining whether and when an entity had sufficient transactions to qualify as a financial participant.  It is undisputed that Samson Investment is a financial participant based on those requirements, and therefore the transfers made by it in connection with the SPA are safe-harbored.

The preceding textual analysis should end the inquiry.  Opinion, 625 B.R. at 300 (citing multiple authorities); *see also, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020) ("When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest.  Only the written word is the law, and all persons are entitled to its benefit."); *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 429-30 (3d Cir. 2016) ("The first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.  If the statute is unambiguous, we must go no further." (citations and internal quotation marks omitted)).  The Court should apply the statute as written and hold that any transfers by Samson Investment are safe-harbored because Samson Investment is indisputably a "financial participant."

## B.      The Trustee's Analogies to Other "Statuses" are Inapposite

The Trustee analogizes to other "statuses" in the Bankruptcy Code in support of his Transfer Date theory.  *See* Opposition ¶¶ 20-22 (analogizing to "insider" and "stockbroker" status, as used in sections 548(a)(1)(B)(ii)(IV) and 546(e), respectively).  Specifically, the Trustee cites cases holding that "insider" and "stockbroker" status is ordinarily determined as of the date of the transfer, then posits that "[t]here is no reason why Section 546(e) should be read differently when the transaction involves an alleged 'financial participant.'"  Opposition ¶¶ 21-22.

But there is an obvious and critical difference: the definitions of "insider" and "stockbroker" contain no temporal referents.  It is possible for one to determine whether a

person was an "insider" or a "stockbroker" as of any given point in time; one must simply apply the statutory criteria as of the date in question.  *See, e.g.*, 11 U.S.C. §547(b)(4)(B), discussed *supra*.

The term "financial participant," by contrast, is ***defined*** by reference to specific measurement dates.  It is thus impossible to determine whether an entity was a financial participant "as of" any date other than those set forth in the statute.[8]  Indeed, the very question that the Trustee says this Court needs to resolve – "whether [Samson Investment] qualified as a financial participant as of the Transfer Date," Opposition ¶ 3 – is circular.  The only way to determine whether Samson Investment was a financial participant is to refer to the definition in section 101(22A).  The term "financial participant" has no freestanding meaning apart from that definition.  And that definition instructs that an entity is a financial participant if it has sufficient agreements or transactions as of one of three alternative measurement dates.  Thus, one cannot determine financial participant status only "as of" the Transfer Date without re-writing the definition of "financial participant."

In addition to his stockbroker and insider analogies, the Trustee contends that the use of the term "financial participant" in section 362(b)(6) supports his statutory interpretation.  Opposition ¶ 23.  Section 362(b)(6) provides an exception to the automatic stay to permit financial participants (and other qualified entities) to exercise certain contractual rights post-petition.  The Trustee argues that "[u]nder Defendants' interpretation, one could conclude that, as long as an entity satisfied the definition of 'financial participant' at any time in history, that entity would be a 'financial participant' always and for all purposes and would have a roving

---

[8]    The Opposition obliquely acknowledges this distinction, but fails to grapple with its import.  *Cf.* Opposition ¶ 21 ("[U]nder the Code's definition of 'insider,' standing alone, a person could qualify as an 'insider' on … the date of the relevant transfer, the petition date, ***or any other date***."  Opposition ¶ 21 (emphasis added)).

relief from automatic stays regardless of whether the entity qualified as a financial participant at the petition date, or even as of the date the [*sic*] of the relevant contract with the debtor." Opposition ¶ 23.

The Trustee has it backwards. It is the ***Trustee***, not the Defendants, who seeks to create a "roving" financial participant status untethered to the dates set forth in the statute. Defendants' position anchors "financial participant" status to the specific dates in section 101(22A): if an entity had sufficient qualifying transactions as of the petition date (or any date within 15 months before the petition date), it is a financial participant. It makes good practical sense in the context of section 362(b)(6) that an entity's financial participant status would be determined as of (or shortly before) the petition date, since the petition date is when the automatic stay would otherwise bar it from exercising rights. More importantly, it is precisely what the statute says.

What the Trustee really seems to be suggesting – although the argument is far from clear – is that "financial participant" has a different meaning depending on where in the Bankruptcy Code it is used. According to the Trustee, for purposes of section 546(e), the term means an entity that has sufficient qualifying transactions as of the "transfer date," and the alternative measurement dates mentioned in the statute are irrelevant. *See* Opposition ¶¶ 14-23. But for purposes of the automatic stay, it means an entity that has sufficient transactions as of the petition date. *See id.* ¶ 24. This strained interpretation is "contrary to the basic canon of statutory construction that identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992). Section 101(22A) sets forth a single definition of the term "financial participant" with no qualifiers based on the context in which it is used, and the Court should apply that definition here.

**C.      The Trustee's Policy Arguments Are Irrelevant and Unpersuasive**

Given that the statute is plain on its face, there is no need for the Court to wade into the

policy arguments raised by the Trustee.  *See, e.g.*, *Bostock*, 140 S. Ct. at 1745 ("In the end, the

employers are left to retreat beyond the statute's text, where they fault us for ignoring the

legislature's purposes in enacting Title VII or certain expectations about its operation.  They

warn, too, about consequences that might follow a ruling for the employees.  But none of these

contentions about what the employers think the law was meant to do, or should do, allow us to

ignore the law as it is.").  The role of this Court is to interpret the statute that Congress has

written, not to question its policy judgments.

As the Second Circuit recently observed:

> Section 546(e) is simply a case of Congress perceiving a need to address a
> particular problem within an important process or market and using
> statutory language broader than necessary to resolve the immediate
> problem …. [A]ppellants, and others, have argued that when monetary
> damages are sought only from shareholders, or an LBO is involved, the
> purposes of Section 546(e) are not implicated …. Even apart from using
> the oil and water mixture of applying a narrow literalness to the word
> "trustee" and disregarding the rest of the Section's language, we disagree.

*Tribune*, 946 F.3d at 92.  In other words, Congress has built a broad harbor in section 546(e).  It

may be that its harbor will accommodate boats that were not Congress's most urgent concern,

but that does not entitle parties or courts to narrow it.

But even if the Court were to entertain the Trustee's resort to policy considerations, there

would be no reason to deviate from the plain language of the statute.  In the context of section

546(e), it is logical that the statute shields transfers by or to entities that were financial

participants as of the petition date, regardless of whether they were also financial participants as

of the date of the transfer in question.  As the Court noted in its Opinion on the Initial Motion,

section 546(e) was enacted to minimize the "danger of a 'ripple effect'" that would risk

"disrupting the securities market generally." Opinion, 625 B.R. at 301 n.36 (quoting *Tribune*, 946 F.3d at 92); *cf. Williams v. Morgan Stanley Capital Grp. (In re Olympic Nat. Gas Co.)*, 294 F.3d 737, 742 n.5 (5th Cir. 2002) ("The legislative history of § 546(e) indicates that the provision was intended 'to minimize the displacement caused in the commodities and securities markets in the event [of] a major bankruptcy affecting those industries.'" (quoting H.R. REP. NO. 97-420, at 1 (1982), *reprinted in* 1982 U.S.C.C.A.N. 583)).

It is only from and after the petition date that transfers will actually be avoided and set in motion that ripple effect. Thus it makes perfect sense for the statute to focus on the magnitude of the applicable financial participant's positions as of the petition date (and thus the potential ripple effects as of that date), rather than the transfer date.[9]

The Opposition ignores the foregoing considerations and instead seizes on language in the Opinion regarding the importance of "finality" and "certainty." Opposition ¶ 26. The Trustee asserts that his "as of the Transfer Date" interpretation of section 546(e) furthers those policy goals because "market participants would be able to accurately predict at the time of a transaction whether the transaction would qualify for Section 546(e)'s safe harbor." *Id.*

This argument overlooks that market participants are ***already*** able to make that assessment at the time of a transaction, because one of the alternative "financial participant" measurement dates in section 101(22A) is "the time [the relevant entity] enters into a securities contract." Thus, before a counterparty "enters into a securities contract" with a potential financial participant, the counterparty has the ability to "assess whether the transaction at issue would qualify for the Section 546(e) defense." Opposition ¶ 26. In other words, there is no

---

[9] Measuring financial participant status on the petition date is also consistent with the foundational principle of bankruptcy law "everything stops at" the petition date, which "fixes the moment when the affairs of the bankruptcy are supposed to be wound up." *Sexton v. Dreyfus*, 219 U.S. 339, 344-45 (1911).

29319992.1

need to write "as of the transfer date" into the statute because the statute as written already adequately addresses the Trustee's policy concerns.

### III. <u>CONCLUSION</u>

For the reasons set forth herein and in the Opening Memorandum, the Court should grant the Motion and enter partial summary judgment in Defendants' favor on the issue whether Samson Investment is a financial participant such that any challenged transfers made by it, including specifically the Redemption Cash Transfer of $2.75 billion, are safe-harbored and, therefore, unavoidable under section 546(e).

April 29, 2022

Respectfully submitted,

/s/ Michael R. Nestor

David M. Stern (admitted *pro hac vice*)
Robert J. Pfister (admitted *pro hac vice*)
Samuel M. Kidder (admitted *pro hac vice*)
**KTBS LAW LLP, F/K/A KLEE, TUCHIN,
BOGDANOFF & STERN LLP**
1801 Century Park East, 26th Floor
Los Angeles, California 90067
(310) 407-4000
dstern@ktbslaw.com
rpfister@ktbslaw.com
skidder@ktbslaw.com

Michael R. Nestor (No. 3526)
Michael S. Neiburg (No. 5275)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
(302) 571-6699
mnestor@ycst.com
mneiburg@ycst.com

Sabin Willett (admitted *pro hac vice*)
Andrew J. Gallo (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, Massachusetts 02110
(617) 341-7700
sabin.willett@morganlewis.com
andrew.gallo@morganlewis.com

*Counsel for Defendants*