IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SAMSON RESOURCES CORPORATION, *et al.*, | Case No. 15-11934 (BLS) (Jointly Administered) |
| Debtor. | |
| PETER KRAVITZ, as Settlement Trustee of and on behalf of the SAMSON SETTLEMENT TRUST, | |
| Plaintiff, | Adv. Pro. No. 17-51524 (BLS) |
| v. | |
| SAMSON ENERGY COMPANY, LLC, *et al.*, | |
| Defendants. | |

## REPLY IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT AS TO CERTAIN DEFENDANTS

David M. Stern (admitted *pro hac vice*)
Robert J. Pfister (admitted *pro hac vice*)
Samuel M. Kidder (admitted *pro hac vice*)
**KTBS LAW LLP, F/K/A KLEE, TUCHIN, BOGDANOFF & STERN LLP**
1801 Century Park East, 26th Floor
Los Angeles, California 90067
(310) 407-4000

Sabin Willett (admitted *pro hac vice*)
Andrew J. Gallo (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, Massachusetts 02110
(617) 341-7700

Michael R. Nestor (No. 3526)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square, 1000 North King Street
Wilmington, Delaware 19801
(302) 571-6699

Dated: April 29, 2022

## <u>TABLE OF CONTENTS</u>

**Page**

COUNTERSTATEMENT OF THE "NATURE AND STAGE OF THE PROCEEDING" ........ 1

ARGUMENT ........................................................................................................................ 3

    A.    The LLCs were not "Holders of the Preferred Interests" and, with Discovery closed, are entitled to Summary Judgment .......................................... 3

    B.    Ms. Schusterman is not liable as one "for whose benefit [the Cash Transfers] were made" and is entitled to Summary Judgment ............................. 5

    C.    The Trustee Defendants should be granted Summary Judgment ........................ 12

    D.    Stacy Family Trust should be granted Summary Judgment ............................... 13

    E.    Lynn Schusterman should be granted Summary Judgment ................................ 15

CONCLUSION .................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baldi v. Lynch (In re McCook Metals, LLC)*,
    319 B.R. 570 (Bankr. N.D. Ill. 2005) ...................................................................11

*Brown v. Phillips (In re Phillips)*,
    379 B.R. 765 (Bankr. N.D. Ill. 2007) .....................................................................9

*Halperin v. Moreno (In re Green Field Energy Servs.)*,
    594 B.R. 239 (Bankr. D. Del. 2018) .........................................................11, 12, 14

*In re Delta Phones*,
    2005 WL 3542667 (Bankr. N.D. Ill. Dec. 23, 2005) .............................................11

*In re F-Squared Investment Management, LLC*,
    633 B.R. 663 (Bankr. D. Del. 2021) ........................................................................8

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
    130 F.3d 52 (2d Cir. 1997)......................................................................................10

*Kosmala v. Imhof (In re Hessco)*,
    295 B.R. 372 (B.A.P. 9th Cir. 2003).........................................................................9

*Kravitz v. Samson Energy Co., LLC (In re Samson Res. Corp.)*,
    590 B.R. 643 (Bankr. D. Del. 2018) ......................................................3, 6, 13, 14

*Miller v. D&M Holdings US Inc. (In re Dig. Networks N. Am., Inc.)*,
    2021 Bankr. LEXIS 3080 (Bankr. D. Del. Nov. 8, 2021) ......................................15

*Miller v. McCown De Leeuw & Co. (In re Brown Sch.)*,
    368 B.R. 394 (Bankr. D. Del. 2007) ......................................................................12

*Rigby v. Mastro (In re Mastro)*,
    465 B.R. 576 (Bankr. W.D. Wash. 2011) ................................................................9

*Russell v. Harper (In re Dearmond)*,
    2017 Bankr. LEXIS 3188 (Bankr. E.D. Tenn. Sep. 21, 2017) .................................9

*VFB LLC v. Money's Tr. (In re VF Brands, Inc.)*,
    282 B.R. 134 (Bankr. D. Del. 2002) ......................................................................12

*VFB LLC v. Campbell Soup Co.*,
    482 F. 3d 624 (3d Cir. 2007).....................................................................................2

**Statutes**

6 Del. C. § 1-201(b)(21)(A) ...........................................................................................4

6 Del. C. § 1-201(b)(21)(B) ...........................................................................................4

6 Del. C. § 3-301 ...........................................................................................................4

11 U.S.C. § 550 ...........................................................................................................12

11 U.S.C. § 550(a)(1) ...........................................................................................5, 9, 10

11 U.S.C. § 550(a)(2) .....................................................................................................5

11 U.S.C. § 1126(c) ........................................................................................................5

**Other Authorities**

American Bar Foundation, *Commentaries on Indentures* (1971) .....................................4

Black's Law Dictionary (11th ed. 2019) ..........................................................................4

Merriam-Webster's Collegiate Dictionary (11th ed. 2020) ..............................................4

In support of their Motion for Partial Summary Judgment as to Certain Defendants (the "Motion," [Docket No. 350]), the Moving Defendants submit the Supplemental Declaration of Drew Phillips ("Suppl. Decl."[1]), and reply to the *Samson Settlement Trustee's Memorandum of Law in Opposition to Defendants' Motion for Partial Summary Judgment as to Certain Defendants* ("Opp.") [Docket No. 355] as follows:[2]

## COUNTERSTATEMENT OF THE "NATURE AND STAGE OF THE PROCEEDING"

The Motion, and its companion, raised technical points: releases, the actual path of transfers, portfolios of derivatives. The Plaintiff responded with a mini-trial brief on the remaining merits. Opp. ¶¶ 1-10. A conspiracy theorist in the fever swamp could hardly have outdone his preview.

Ms. Schusterman, we are to infer, pressed worthless preferred shares on an unsuspecting charity. *See* Opp. ¶¶ 8; 16-18. (The trial will show that she thought the preferred shares would generate an equity *return*, and that the charity could most tax-efficiently benefit from it). Plaintiff posits that SRC was in a "death spiral."[3] (Omitted: SRC's bonds traded above par until 32 months after the sale, *see* Docket No. 217 at 4 (fourth bullet), ███████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. The defense did not move to dismiss Ms. Schusterman at the outset of the case – aha! *See* Opp. ¶¶ 6-7 (Could it be that *before* discovery, counsel anticipated a Rule 56(d) response, which *after*

---

[1] Through selective and deeply misleading citations to Mr. Phillips' deposition, the Opposition and its massive declaration make certain new misleading contentions that require supplementing the record with deposition testimony and the undisputed terms of the two owner trusts.

[2] Defined terms given in the memorandum of law in support of the Motion [Docket No. 351] are used here.

[3] Opp. ¶ 23.

discovery is moot?).  The remarkable peroration is that by filing too many motions, *see* Opp. ¶ 1, the defense must want to avoid trial.  In fact the defense has *pressed* for trial, while at every turn (including this one) the Plaintiff asked for another extension, another delay – anything *but* a trial.[4]

Then there is Mr. Baxter.  He hasn't anything to do with the Motion either, but the Plaintiff wants the Court to know that Mr. Baxter will mount *Rocinante* and carry the Plaintiff's concocted hindsight valuation standard into battle.[5]  Perhaps so, but arrayed against him is the greatest army of market participants ever mustered in an avoidance action – the industry's leading investment banker, four seasoned equity investors (among them, a world-famous PE firm and the leading gas market experts in the field), and a full complement of Wall Street banks.  Advised by platoons of engineers, analysts, accountants, lawyers, they left no stone unturned in diligence, generated model after model, assessed the acreage, analyzed commodity pricing, tested the business plan.  They studied the comps and catalogued the trading marketplace.  They stood at arms' length, laser-focused on profit.  Most important of all, they *closed*, putting billions of their own dollars at risk.  In this circuit, this market evidence has always trumped the opinions of a mercenary, who trots onto the field a decade late, without a cent at risk.  *VFB LLC v. Campbell Soup Co.*, 482 F. 3d 624 (3d Cir. 2007).

Defendants turn to the points relevant to the Motion:

---

[4] The point of the Motion and its companion [Docket No. 346] is to confine the trial to the actual transferees, and those transfers that occurred outside of a safe harbor.

[5] Mr. Baxter's valuation is described as prepared under "industry standard methodologies."  Opp. ¶ 2.  Trial will show it was anything but.  The Plaintiff also seems miffed that the Defense did not invent a made-to-order hindsight reconstruction too, as Mr. Baxter did.  The defense will offer expert evidence, including expert evidence on how oil and gas company sales were actually priced at the time.  Experts can help the Court understand how the marketplace *actually* functioned, but they cannot rewrite its determinations of value.

## ARGUMENT

**A.    THE LLCS WERE NOT "HOLDERS OF THE PREFERRED INTERESTS" AND, WITH DISCOVERY CLOSED, ARE ENTITLED TO SUMMARY JUDGMENT**

Prior to the sale, SIC had three shareholders.  Two were Delaware LLCs.  The Court concluded that each LLC would be a "Released Person," unless discovery showed that it had been a holder of the "Preferred Interests."  Release Opinion, 590 B.R. at 654.  The Plaintiff's opposition does not dispute that the Foundation was the initial and only recipient of the Preferred Interests, that it held them until they were cancelled, and that it twice advised the parties with public filings.[6]  Instead, he argues that each of the LLCs was *also* a "holder" of the Preferred Interests, because each had some influence over the original allocation of those Preferred Interests to the Foundation.  Opp. ¶¶ 15-18; 48.

The Court already rejected a previous effort by Plaintiff to sidestep the phrase "holders of Preferred Interests."  Release Opinion, 590 B.R. at 654 n.9:

> the Trust contended that the term "holders of Preferred Interests" was actually intended as a shorthand, collective label for all of the Moving Defendants, irrespective of whether they ever held Preferred Interests. . . . Nothing in the Plan or Confirmation Order supports this contention, and *the Court does not find that the phrase "holders of Preferred Interests" is ambiguous or otherwise susceptible to multiple interpretations.  The Trustee's contention at argument that Moving Defendants who never actually received any Preferred Shares in the 2011 LBO are nevertheless "holders" because they may have had an unexercised right to receive Preferred Shares is similarly unavailing.*

(emphasis added).

The Plaintiff cites no case or statute for his expansive interpretation of the word "holder".  His only authority is the dictionary, but even the lexicographers are against him.  The essence of a holder's status is that the holder *possesses* the thing held:

---

[6] *See* Docket No. 351 at 10.

> **holder**  **1 :** a person that holds as **a** (1): owner (2): tenant
> **b** a person *in possession of and legally entitled to receive*
> *payment of* a bill, note or check."

Merriam-Webster's Collegiate Dictionary 592 (11th ed. 2020) (emphasis added); *see* Opp. ¶ 49

(citing to similar definition in Black's Law Dictionary (11th ed. 2019)).  The Uniform

Commercial Code is to the same effect.  A "holder" is "(A) *the person in possession* of a

negotiable instrument that is payable either to bearer or to an identified person that is the person

in possession, or (B) *the person in possession* of a negotiable tangible document of title if the

goods are deliverable either to bearer or to the order of the person in possession."  6 Del. C. § 1-

201(b)(21)(A)-(B) (emphasis added).  Addressing who may enforce an instrument, the UCC

distinguishes between "the holder of the instrument" and persons who are "not in possession of

the instrument."  *Id*. § 3-301.  Neither the UCC, nor the dictionary, nor any case anywhere

contemplates, by the word "holder," a person who exercised influence or gave consent for some

*other* person to possess the security.[7]

Nor does common sense contemplate the Plaintiff's argument.  One need look no further

than the Samson plan of reorganization.  What did "holder" mean elsewhere in the *same plan*

that used the word in its definition of "Released Persons?"[8]  Among other things, it meant those

entitled to vote. "Each holder of an Allowed [Class 3, 4 or 5] Claim will be entitled to vote to

---

[7] The same holds true for debentures:

> "'*Holder*' when used with respect to any [d]ebenture means a Debentureholder, and when
> used with respect to any coupon means the bearer thereof."
> "*Debentureholder*" in turn means "a bearer of an [u]nregistered debenture or a [r]egistered
> Holder of a [r]egistered [d]ebenture."

American Bar Foundation, *Commentaries on Indentures*, § 1-1(b), at 39 (1971).

[8] Plan, Art. I.A.124.

accept or reject the Plan." Plan, Art. III.B.3(d); 4(d); 5(d). Votes then had to be counted. 11 U.S.C. § 1126(c). If "holders" of claims included not merely the legal person with possession of the claim, but whoever might have been involved in deciding whether that creditor should have had a claim in the first place, how would votes have been counted? Under the Plaintiff's theory, the very plan that gives him power to bring this adversary proceeding could never have been confirmed, because only a soothsayer could have known who the holders were.[9]

Exhaustive fact discovery has now closed. It never unearthed any holder of the Preferred Interests other than the Foundation. The LLCs never possessed the preferred interests. They were never entitled to receive payment upon them, should any payment have been due. They were not "holders." They are therefore released.

## B. MS. SCHUSTERMAN IS NOT LIABLE AS ONE "FOR WHOSE BENEFIT [THE CASH TRANSFERS] WERE MADE" AND IS ENTITLED TO SUMMARY JUDGMENT

With regard to Ms. Shusterman, the Plaintiff pins his hopes on a "beneficiary" theory.[10] His theory requires proof that the *initial transfers* – to the LLC shareholders – benefited Ms. Schusterman, 11 U.S.C. § 550(a)(1), but he elides and misstates undisputed evidence as to the relationships between (i) the Selling Shareholder LLCs (themselves released),[11] (ii) the trusts

---

[9] One hardly need go further with this absurd argument, but if votes were counted and a plan confirmed, how would distributions have been made? The plan says they are to be made to "each holder of an Allowed [Class X] Claim." Plan, Art. III.B.3(c); 4(c); 5(b). But who would that be? Under the Plaintiff's theory, multiple entities can simultaneously "hold" the same claim; indeed, those entities can "hold" a security before it exists.

[10] The opposition abandons any contention that Ms. Schusterman is liable as an "immediate or mediate transferee" of the initial transferees. *See* 11 U.S.C. § 550(a)(2). A decade after the sale, and after years of exhaustive discovery, there is no evidence that she ever received a dollar of its proceeds.

[11] *See* Argument § A.

(themselves released)[12] that owned the equity interests in those LLCs, and (iii) Ms. Schusterman. The facts are undisputed:

**ST 2008 (Delaware) Management LLC ("ST 2008")**. The first LLC shareholder was and is a Delaware limited liability company, fully capitalized, which has owned, invested in and reviewed various business and investment opportunities.  SUF ¶ 40.  In 2011, its equity (in the form of membership interests) was held by Schusterman 2008 Delaware Trust (which has been released).[13]  That trust had three trustees: Ms. Schusterman, Philip Tholen and Wilmington Savings Fund Society, FSB ("Wilmington").  SUF ¶ 5; *see* Suppl. Decl., Ex. 1 (Trust Agreement Establishing Schusterman 2008 Delaware Trust) at § 1.1.  At the time, Ms. Schusterman was one of several contingent trust beneficiaries.  *See* Declaration of Lijun Zhang in Support of Oppositions to Motions for Partial Summary Judgment ("Zhang Decl." or "Zhang Declaration") [Docket No. 356] Ex. M at 277-78 ("*A. She is one of the named possible beneficiaries of the two trusts….*"); Suppl. Decl., Ex. 1 at § 1.2.  Because there are no mandatory distribution provisions, Ms. Schusterman, as a contingent beneficiary, could not force a distribution.  Nor could she do so as a co-trustee.  A distribution *to* a trustee could be voted only by the other two trustees, one of which is a corporate bank trustee in Delaware.  *Id*. Ex. 1 § 10.3.

The Schusterman 2008 Delaware Trust never distributed sale proceeds to beneficiaries; indeed, it has never *received* sale proceeds – except to the limited extent set out below.  SUF ¶¶ 41, 42.

**SFT (Delaware) Management, LLC ("SFTDM")**.  The second LLC shareholder was also a Delaware limited liability company.  Its membership interests were also owned by a

---

[12] Release Opinion, 590 B.R. at 652.

[13] *Id.*

separate trust: Stacy Family Delaware Trust (also released).[14]  That trust too had three trustees:
Ms. Schusterman, Lynn Schusterman and Wilmington.  SUF ¶ 3; Suppl. Decl., Ex. 2 at § 1.1.
Here too, Ms. Schusterman was one of several contingent trust beneficiaries, Zhang Decl. Ex. M
at 277-78; Suppl. Decl., Ex. 2 at § 1.2.  Since the sale, SFTDM has made no transfer to Stacy
Family Delaware Trust for the purpose of distribution to trust beneficiaries.  SUF ¶¶ 45, 46.
Here too, if sale proceeds *had* actually reached the trust, Ms. Schusterman could not have forced
a distribution; only the other trustees had authority to authorize a distribution to her.  Suppl.
Decl. Ex. 2 § 10.3.  And here too that has never happened.  Stacy Family Delaware Trust never
received any sale proceeds, except to pay legal fees and taxes as set out below.  SUF ¶ 45.  The
disinterested trustees have never voted to distribute proceeds to Ms. Schusterman, or anyone
else.

      As LLCs, the two former SIC shareholders are pass-through companies for tax purposes.
As separate tax-paying entities, the trusts—not Ms. Schusterman—report the income and
expenses of the LLCs for federal and state tax purposes.  Each LLC made a distribution to its
owning trust so that the trustees could pay capital gains tax incurred *by the trust* (not by Ms.
Schusterman) on the gains recognized when the LLC owned by that trust sold its SIC stock.  SUF
¶¶ 41 (ST 2008); 45 (SFTDM).[15]  Those distributions applied only to the trust's tax returns to
reflect tax obligations *of those trusts*.

---

[14] *Id.*

[15] The Opposition continually ascribes agency to Ms. Schusterman where there is none in the record.
Paragraph 22 of the Opposition states that she "directed the use of the proceeds" to pay Trust taxes.  But
the record citation shows only that the *LLCs* – of which Mr. Phillips was himself a manager – made
distributions "so that the trust[s], who were the members, could pay their taxes."  *See* Opposition ¶ 22 and
cited material in the Zhang Declaration.

The Opposition asserts that the owner trusts were the "real sellers," citing *tax documents* generated because, as a matter of tax law, the LLC sellers were pass-through entities.  Opp. ¶ 12. That an LLC debtor passes through its tax obligations to its member is irrelevant for fraudulent transfer analysis.  *See generally, In re F-Squared Investment Management, LLC*, 633 B.R. 663, 670-71 (Bankr. D. Del. 2021) (Silverstein, J.).[16]

Reaching SEC, the opposition fully embraces fantasy.  "*Ms. Schusterman* used proceeds *received from the LBO* to capitalize and fund *her new company* Samson Energy."  Opp. ¶ 21 (emphasis added).  That statement is false at every level.  As discussed above, *Ms. Schusterman* received no proceeds from the sale.  SEC was not "*her* new company."  SEC was formed by SFTDM, which was its initial sole member.  (Since 2012 SEC's ownership has changed from time to time, as new investors made capital infusions.  SUF ¶¶ 25-29.  Ms. Schusterman has never been an owner.  *Id.*).  In sum, prior to the sale, SFTDM owned SIC shares – representing an investment in an oil and gas exploration and production company.  It sold them for cash.  It then formed a new oil and gas company and invested $800 million of the cash that it received in that company to give it working capital, and later made additional equity investments and loans into that new venture.  *Id.* ¶ 25.  Over the years, SEC has consumed new invested capital at a far greater rate than it has generated a return.  Though the returns have never equaled the investments, they have gone to its owners – not to Ms. Schusterman.  *See generally*, Phillips Decl. [Docket No. 352] ¶¶ 26-28.

Trying to twist this undisputed record into a liability theory against Ms. Schusterman, the Plaintiff relies on cases that are easily distinguished.  In all of them, the initial transferee is a

---

[16] Under the Plaintiff's theory, it is hard to see how an LLC could be a debtor at all, because the "real debtor" would be the member that pays the pass-through tax liability.  The argument is meritless.  The "real sellers" were the LLCs.

trust, and the question is whether the beneficiary of that trust comes within section 550(a)(1).  In

*Russell v. Harper (In re Dearmond)*, 2017 Bankr. LEXIS 3188 at *4-8, 25-29 (Bankr. E.D. Tenn.

Sep. 21, 2017), an individual debtor transferred securities into a trust, where they were converted

to cash.  His wife was the trust beneficiary.  This structure made clear that the wife was the

person for whose benefit the transfer was made.  *Brown v. Phillips (In re Phillips)*, 379 B.R. 765,

774, 786-87 (Bankr. N.D. Ill. 2007), is similar.  An individual debtor transferred property to a

trust, of which the only named beneficiary was his wife.  When the debtor paid off the mortgage

on that trust property, his wife plainly was the person for whose benefit the payment was made.

*Kosmala v. Imhof (In re Hessco)*, 295 B.R. 372, 378 (B.A.P. 9th Cir. 2003), is to the same effect:

a transfer to a trust is deemed to benefit the trust's beneficiary.  Other cited cases flavor this

basic construct with rampant abuse of the trust form by individuals living the high life at the

expense of creditors.  *Rigby v. Mastro (In re Mastro)*, 465 B.R. 576, 590-92, 595, 601-02 (Bankr.

W.D. Wash. 2011), illustrates: an individual debtor in financial distress moved assets around

multiple trusts in which he and his wife were beneficiaries, without interruption of his personal

use of the so-called "trust assets:" homes, Rolls Royce automobiles, jewelry, and cash.[17]

This case includes no initial transfer *to a trust*.  None of the cited cases involves what we

have here: (i) business entities – LLCs – receiving cash for a business sale made to a business

buyer, (ii) the LLCs then using that cash to make further business investments; (iii) trusts whose

only relationship to the LLCs, apart from paying taxes that they pass through, is that each

continues to own the equity of the LLC, and (iv) an individual who was one of multiple trust

beneficiaries, who never herself received or used sale proceeds, and who never had the power to

compel the LLC to make a distribution to the trust, or the trust to make a distribution to herself.

---

[17] Nothing like that appears in the record of this case.

"Beneficiary" targets must be beneficiaries, as the case law defines that term, *of the initial transfer.* 11 U.S.C. § 550(a)(1); *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997) ("such persons are liable under (a)(1) *only in respect of 'such initial transfer'*") (emphasis added).  A contingent beneficial interest in an equity holder of the initial transferee is simply not within the statute, even if at some point in the future the trust beneficiary might "benefit" – in the colloquial sense – from money or property received by the trust.  And in any event, as shown in the opening brief, Ms. Shusterman received from the sale no actual, quantifiable or accessible benefit.[18]  The actual benefit went to distinct legal persons: the LLCs.  Any benefit to her was not quantifiable because (i) the LLCs were business entities, whose creditors had and have priority over the owning trust, and (ii) the owning trust has multiple beneficiaries, none of whom had a designated share of the trust or the right to force a distribution.[19]  As one with only a contingent interest – which she does not control – in whatever the trusts might receive, her benefit was not quantifiable either.  Nor were the cash proceeds sitting in the LLCs "accessible" to Ms. Schusterman.  For one thing, they were used by the LLCs themselves in making various business investments.  For another, they could be distributed by the LLC only to its owner – which was not her.  For a third, even had funds reached the owner trusts (they didn't), she could receive proceeds personally only if both of the

---

[18] *See* Docket No. 351 at 13-16.

[19] The Opposition argues that Ms. Schusterman received an "immediate benefit" from the "increase in the value of her interest in the Selling Trusts."  Opp. ¶ 41.  That would be irrelevant, if it were true, (a shareholder of a shareholder of General Motors does not receive an "immediate benefit" when General Motors receives a transfer, for example, from a sale of assets), but it is not true.  There was no increase in value.  Prior to the sale, the selling trusts owned the membership interests in LLCs that owned shares in a valuable company.  The membership interests didn't increase in value when the LLCs traded the shares for the cash value of those shares.  And Ms. Schusterman's contingent interest as a potential beneficiary of those trusts didn't change at all.

other trustees (one of which was a bank in Delaware), exercising their independent fiduciary duties, directed a distribution. That never happened.

The opposition invites the Court to adopt broad dicta in *Baldi v. Lynch (In re McCook Metals, LLC),* 319 B.R. 570 (Bankr. N.D. Ill. 2005). But those dicta have been roundly – and rightly – criticized. *See, e.g., In re Delta Phones*, 2005 WL 3542667, at *6 n.4 (Bankr. N.D. Ill. Dec. 23, 2005) ("[T]he [*McCook*] decision appears not to limit 'control' to alter ego situations. If that is what *McCook* means, the test renders every majority shareholder of a closely-held corporation (to take one example) liable for transfers to the corporation, although the corporation is entirely legitimate and all corporate formalities have been carefully observed. In seeming to approve this result, *McCook* fails to give corporate form—the critical legal distinction between corporations and their directors, officers, and shareholders—its due. Something more than mere 'control' must be shown."). Even the *McCook* court, recognizing its holding was questionable, tried to buttress its argument with additional findings, including the fact that the defendant actually received "direct monetary benefit" from the disputed transfer. 319 B.R. at 592 n.18.

The guiding authority in this district is *Halperin v. Moreno (In re Green Field Energy Servs.)*, 594 B.R. 239 (Bankr. D. Del. 2018), where Judge Gross held that the defendant (who had more direct economic connections with the transferees than does Ms. Schusterman here) was not the entity for whose benefit the transfer was made. 594 B.R. at 288. *Green Field* properly held that the defendant's control over, or equity interests in, the initial transferees was insufficient to establish liability. "Control of an entity is not enough to show access to the benefit. . . . Percentage interests and annual payments are not enough to show, as a legal conclusion, that [the defendant] had access to the transfers." *Id.* at 287.

Like the defendant in *Green Field*, Ms. Schusterman never received an onward distribution of the sale proceeds. And the defendant in *Green Field* held equity interests in the initial transferees, which Ms. Schusterman never has held. 594 B.R. at 288-89. See discussion, *supra* at __. In sum, Ms. Schusterman received no actual benefit, has no quantifiable interest, and had no access to the Cash Transfers; she is therefore entitled to summary judgment.

*SEC*. The argument that Ms. Shusterman is a beneficiary of the Gulf Coast/Offshore transfers, *see* Opp. ¶ 45, fails for all of the same reasons. Her only connection was as a contingent beneficiary of a trust, which was the equity owner of an LLC, which owned an equity interest in SEC.

Ms. Schusterman is entitled to dismissal for a second reason. Each of the transferee LLCs was released. *See* Argument § A. As discussed above, the LLCs were released because they weren't holders of the Preferred Interests, and this Court has already held that each owner trust of the LLCs was also released. Judge Walrath has held that the downstream transferee of a released person cannot be liable as a subsequent transferee. *Miller v. McCown De Leeuw & Co. (In re Brown Sch.)*, 368 B.R. 394, 407 (Bankr. D. Del. 2007) ("Because the Trustee cannot avoid the transfer to the initial transferee, TIAA, the Trustee cannot recover against the mediate transferee, MDC."); *VFB LLC v. Money's Tr. (In re VF Brands, Inc.)*, 282 B.R. 134, 139 (Bankr. D. Del. 2002) ("Under section 550 of the Bankruptcy Code, in order to recover against a mediate or intermediate transferee, the claimant must establish that the transfer is a voidable fraudulent conveyance vis-à-vis the initial transferee."). A fortiori, an indirect, contingent beneficiary of the initial transferee's equity holder cannot be liable.

## C.   THE TRUSTEE DEFENDANTS SHOULD BE GRANTED SUMMARY JUDGMENT

The Opposition's theory on the trustee defendants is incoherent. It asserts no basis for liability apart from their service as trustees of those trusts. It concedes that the owner trusts have

been dismissed.  Opp. ¶ 54.  It cites decisions for the proposition that where trust property is subject to an avoidance action, the trustees are proper defendants, but here, the trust property is not subject to avoidance, because the trusts were released.  The court should grant summary judgment to the trustees of the trustee defendants.

## D.    STACY FAMILY TRUST SHOULD BE GRANTED SUMMARY JUDGMENT

Defendants submit that Stacy Family Trust was released – for the same reason that the two other trusts are released.  At the time of the sale, it was a "former affiliate" of SIC, having been a previous, but not a current shareholder, and therefore came within the Plan's release language.  *See* Release Opinion, 590 B.R. at 652.  The Court concluded that other documents gave rise to an ambiguity, *id.*, but with fact discovery now closed, no evidence has surfaced to resolve that ambiguity in the Plaintiff's favor.  No evidence is cited to make it plausible that, notwithstanding the release's clear language, anyone wanted to preserve claims against a trust entity that was not a Selling Shareholder, held no equity in any Selling Shareholder, had no control over any Selling Shareholder, and received no proceeds.  Because, as shown in Section I, it is undisputed that Stacy Family Trust never was a "holder" of Preferred Interests, it should be deemed released.

Even if Stacy Family Trust had *not* been released, the Plaintiff points to no evidence raising a triable question whether it could be liable as a subsequent transferee or a beneficiary of the initial transfer.  Stacy Family Trust was not a seller, did not own a seller, and had no legal or beneficial interest in the trusts that owned the sellers.  *See* Release Opinion, 590 B.R. at 652.  No one disputes that Stacy Family Trust did not own or sell the shares.  *See* Complaint ¶¶ 9-11; Opp. ¶ 12 (each correctly alleging that the LLCs and the Foundation were the "Selling Shareholders").  The Plaintiff concedes, as he must, that the actual trusts owning the LLC shareholders are and were, respectively, Stacy Family Delaware Trust and Schusterman 2008 Delaware Trust.  Opp.

-13-

¶¶ 12, 19; *see* Release Opinion, 590 B.R. at 651-52.  That alone is enough to dispose of any "beneficiary" theory.  *See generally, Green Field*.[20]

Plaintiff cites to Mr. Phillips' deposition testimony about a 2011 document discussing a 2008 tax matter (when Stacy Family Trust *was* a shareholder), but omits other deposition testimony where Mr. Phillips clearly states that Stacy Family Trust, as of the time of the sale, was neither a Selling Shareholder nor an owner of a Selling Shareholder.  Suppl. Decl. ¶¶ 4-5; *see also* Zhang Decl. Ex. AA, at 2 (note of the "Shareholder Legal Names," including, "SFT (Delaware) Management LLC," and showing that Mr. Phillips prepared the spreadsheet to calculate "income taxes payable").[21]

The Plaintiff asserts that "although the record is not entirely clear," Mr. Phillips *testified* that "SFT" refers to "Stacy Family Trust."  Opp. ¶ 56.  The record is *entirely clear*: Mr. Phillips did no such thing.  In the cited deposition testimony, he was questioned about Deposition Exhibit 349, *not any other document*.  Zhang Decl. Ex. M at 41-46; Suppl. Decl. ¶ 4.  In *that exhibit*, "SFT" does indeed refer to Stacy Family Trust.  Suppl. Decl. ¶ 4, Ex. 3.  Mr. Phillips was questioned about a gift tax issue that arose in 2008,[22] when Stacy Family Trust was a stockholder of SIC.  *Id.*  Mr. West, the questioner, specifically directs the witness to *that document*.  Zhang Decl. Ex. M at 45:l5-16.  ("*Q*: … Do you see that?" *A*: "Let me – yes, I see that, uh-huh.").  Mr.

---

[20] In fact, the Plaintiff does not even allege that Stacy Family Trust is a beneficiary of Stacy Family Delaware Trust or Schusterman 2008 Delaware Trust.

[21] The spreadsheet uses other shorthand – "Schusterman 2008 Trust" for Schusterman 2008 Delaware Trust, and "Schusterman Foundation" for Charles and Lynn Schusterman Family Foundation.  Zhang Decl. Ex. AA.

[22] The transcript reads "2018," but this is a transcription error for "2008."  The exhibit under discussion, written in 2011, refers to a "stock repurchase of $450MM from Lynn [Schusterman] and SFT on 8-19-08."  *See* Suppl. Decl. ¶ 4, Ex. 3.

Phillips was then asked if *that reference* to "SFT" referred to Stacy Family Trust – which it did. *Id.* 46:2-8. He was never asked whether the references in Zhang Declaration Exhibits AA-CC were to Stacy Family Trust. They are not. Suppl. Decl. ¶ 4. There is no lack of clarity about this.[23]

### E.   LYNN SCHUSTERMAN SHOULD BE GRANTED SUMMARY JUDGMENT

Not a single fact has been advanced to support a claim against Lynn Schusterman, who never received a sale proceed, a tangible benefit, an intangible benefit, a hope, or an expectation from the sale. The Plaintiff musters only one fact at all: that she did not file a declaration. It is not her burden to file a declaration. It is the Plaintiff's burden to point to specific facts raising a triable issue. *Miller v. D&M Holdings US Inc. (In re Dig. Networks N. Am., Inc.)*, 2021 Bankr. LEXIS 3080, at *5 (Bankr. D. Del. Nov. 8, 2021) (once a movant for summary judgment meets its burden to demonstrate the "absence of a genuine issue of material fact, . . . . [t]he burden then shifts to the nonmoving party to identify specific facts that show the presence of a genuine dispute for trial."). Plaintiff has failed to do so, and evidently hopes to keep her in the case for intimidation value. Lynn Schusterman should be granted summary judgment.

### CONCLUSION

For the foregoing reasons, the Motion should be granted.

---

[23] Plaintiff's subsequent transfer theory is that Stacy Family Trust received $26 million from ST 2008 in 2013 (18 months after the sale), and another $45 million from ST 2008 in 2014. Opp. ¶ 55. Each was the partial repayment of loan obligations that ST 2008 owed to the Stacy Family Trust pursuant to two separate promissory notes. Suppl. Decl. ¶ 6. These were not the subsequent transfer of the 2011 sale proceeds received by ST 2008, as Plaintiffs could have determined by asking the witness.

April 29, 2022                                        Respectfully submitted,


                                                      /s/ Michael R. Nestor
David M. Stern (admitted *pro hac vice*)              Michael R. Nestor (No. 3526)
Robert J. Pfister (admitted *pro hac vice*)           Michael S. Neiburg (No. 5275)
Samuel M. Kidder (admitted *pro hac vice*)            **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
**KTBS LAW LLP, F/K/A KLEE, TUCHIN,**                 Rodney Square, 1000 North King Street
**BOGDANOFF & STERN LLP**                             Wilmington, DE  19801
1801 Century Park East, 26th Floor                    (302) 571-6699
Los Angeles, California 90067                          mnestor@ycst.com
(310) 407-4000                                         mneiburg@ycst.com

                                                      Sabin Willett (admitted *pro hac vice*)
                                                      Andrew J. Gallo (admitted *pro hac vice*)
                                                      **MORGAN, LEWIS & BOCKIUS LLP**
                                                      One Federal Street
                                                      Boston, MA  02110
                                                      (617) 341-7700


                        *Counsel for the Moving Defendants*


29319974.1

-16-