# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| SAMSON RESOURCES CORP., *et al¹*<br>Reorganized Debtors. | Case No. 15-11934 (BLS) |
| PETER KRAVITZ, as Settlement<br>Trustee of and on behalf of the SAMSON<br>SETTLEMENT TRUST<br><br>Plaintiff,<br><br>v.<br><br>SAMSON ENERGY CO., LLC, *et al.*<br><br>Defendants. | Adv. Pro. No. 17-51524 (BLS)<br><br>Re: D.I. 346, 350 |

## OPINION REGARDING SUMMARY JUDGMENT MOTIONS

Before the Court are two summary judgment motions:  (1) Samson

Defendants' Motion for Partial Summary Judgment under Bankruptcy Code

§ 546(e);² and (2) Motion of Certain Defendants for Summary Judgment.³  Peter

---

¹ The Reorganized Debtors in these chapter 11 cases include: Geodyne Resources, Inc., Samson Contour Energy Co., Samson Contour Energy E&P, LLC, Samson Holdings, Inc., Samson-International, Ltd., Samson Investment Company, Samson Lone Star, LLC, Samson Resources Company, and Samson Resources Corporation.

² Adv. Docket No. 346 (the "§ 546(e) SJ Motion").  The Court previously granted summary judgment as to two Defendants:  Stacy Family Delaware Trust and Schusterman 2008 Delaware Trust. This § 546(e) SJ Motion is brought by the remaining Defendants.

³ Adv. Docket No. 350 (the "Certain Defendants' SJ Motion").  The "certain defendants" that filed this summary judgment motion are SFT (Delaware) Management, LLC ("SFTDM"); ST 2008 (Delaware) Management ("ST 2008"); Samson Exploration, LLC ("Samson Exploration"); Samson

Kravitz, as Settlement Trustee (the "Trustee") of the Samson Settlement Trust (the "Settlement Trust"), opposes the § 546(e) SJ Motion[4] and the Certain Defendants' SJ Motion.[5]  The Defendants filed reply briefs in support of the summary judgment motions.[6]  On May 19, 2022 the Court heard oral argument on the § 546(e) SJ Motion and the Certain Defendants' SJ Motion and took those motions under advisement.

    (a)  <u>The § 546(e) SJ Motion</u>

The § 546(e) SJ Motion seeks summary judgment on the limited issue of whether certain Redemption Cash Transfers[7] made by Samson Investment Company ( "SIC") fall within the safe harbor of § 546(e).  The Defendants assert that, after engaging in expert discovery, it is now clear that there are no genuine disputes of material fact that § 546(e) applies – more specifically, that SIC qualifies as a "financial participant" and that the Redemption Cash Transfers were made in connection with a securities contract that was made before the commencement of the bankruptcy case.  The Trustee argues in response that there are issues of disputed fact whether SIC qualified as a financial participant *on the date that the Redemption Cash Transfers were made* and, therefore, summary judgment cannot be granted.  For the reasons set forth below, the Court concludes that the

---

Offshore, LLC ("Samson Offshore"); Stacy Family Trust ("SFT"), Stacy Schusterman, Lynn Schusterman, C. Philip Tholen, and Wilmington Savings Fund Society, FSB ("Wilmington Savings") (together, the "Certain Defendants" or the "Moving Defendants").

[4] Adv. Docket No. 354.

[5] Adv. Docket No. 355.

[6] Adv. Docket No. 363 (Reply in Support of the § 546(e) SJ Motion) and Adv. Docket No. 364 (Reply in Support of Certain Defendants' SJ Motion).

[7] This term is defined *infra*.

Bankruptcy Code definition sets forth specific dates for determining when a party is a "financial participant," including the petition date. Because it is undisputed that SIC qualified as a financial participant on the relevant dates dictated by the statute, the § 546(e) SJ Motion will be granted.

    (b) <u>The Certain Defendants' SJ Motion</u>

    The Certain Defendants' SJ Motion argues for summary judgment in favor of specific defendants based on evidence that those defendants were (i) released in the Plan, (ii) not direct or indirect transferees of avoidable transfers, or (iii) named as defendants solely in their capacity as trustees of other defendant trusts that were released or should be released. Because issues of fact remain as to Certain Defendants, that motion will be granted in part, and denied in part.

<u>BACKGROUND</u>[8]

    On September 16, 2015 - - nearly four years after the LBO - - SRC and related entities filed petitions under chapter 11 of the Bankruptcy Code. On February 13, 2017, the Court entered the Order Confirming Global Settlement Joint Chapter 11 Plan of Reorganization of Samson Resources Corporation and Its Debtor Affiliates (the "Plan").[10]

---

[8] There have been a number of summary judgment motions filed in this adversary proceeding. *See, e.g., Kravitz v. Samson Energy Co., LLC (In re Samson Resources Corp.)*, 625 B.R. 291 (Bankr. D. Del. 2020) (the "2020 Decision"); and *Kravitz v. Samson Resources Corp. (In re Samson Resources Corp.)*, 590 B.R. 643 (Bankr. D. Del. 2018) (the "Release Opinion").

[10] The Order is Main Case Docket No. 2019. The Plan is Main Case Docket No. 2009.

3

The Plan established the Samson Settlement Trust. Peter Kravitz was appointed Settlement Trustee and tasked with maximizing recoveries for unsecured creditors asserting more than $3 billion of substantially unpaid claims.[11]

On September 15, 2017, the Trustee filed this adversary complaint under Bankruptcy Code § 544 and § 550 to avoid fraudulent transfers made in connection with the LBO.[12]   Those transfers fall into three categories:

(a) **<u>Redemption Cash Transfers</u>**: Debtor, Samson Investment Company (or "SIC"), transferred $2.75 billion in cash to defendants ST 2008, SFTDM, and the Foundation (the "Selling Shareholders")[13] in partial redemption of their shares.

(b) **<u>Purchase Cash Transfers</u>** – Debtor SRC transferred $3.5 billion in cash to the Selling Shareholders in consideration of their simultaneous transfer to SRC of the remaining shares of SIC.

(c) **<u>Asset Transfers</u>**:  SIC's divestiture of the Company's Gulf Coast and Offshore Assets and the Selling Shareholder Transaction Assets through a series of transactions whereby three of SIC's subsidiaries (Samson Exploration, Samson Offshore and Samson Concorde) acquired the Gulf Coast and Offshore Assets; Samson Energy then acquired ownership of

---

[11] Complaint ¶ 1.

[12] By Order dated June 15, 2018, the Court dismissed the counts in the Complaint asserting claims predicated upon intentional fraudulent transfers. Adv. Docket No. 61.  By Opinion dated August 30, 2018, the Court granted partial summary judgment and held that certain defendants were released from liability in this adversary proceeding pursuant to the release language in the Plan.  Adv. Docket No. 82.

[13] The Selling Shareholders listed in the Complaint are ST 2008, SFTDM, and the Charles and Lynn Schusterman Family Foundation (the "Foundation"). *See* Complaint ¶ 11.

those three entities and the Selling Shareholder Transaction assets in exchange for the Selling Shareholders' discharge of certain subordinated notes payable to them by Samson Investment.[14]

DISCUSSION

A.      The §546(e) SJ Motion

In previous cross-motions for summary judgment in this adversary proceeding, the parties disputed whether the safe harbor defense of Bankruptcy Code § 546(e) applies to protect avoidable transfers made by debtors who qualify as financial participants.  On December 23, 2020, this Court issued an Opinion considering (among other things) the use of the term "financial participant" in Bankruptcy Code § 546(e) and determined that the plain text and structure of the Code's definition of financial participant did not exclude debtors.[15]  At that time, however, this Court also determined that the Trustee should be permitted to complete discovery in connection with the declarations submitted by the Samson Defendants to demonstrate whether particular debtor-defendants had the requisite agreements or transactions to meet the definition of a financial participant under § 101(22A).

In the § 546(e) SJ Motion now before the Court, the Defendants narrowed the scope of their summary judgment motion to focus on a single Debtor-transferor: Samson Investment Company (or "SIC").  The Defendants claim that (i) SIC held sufficient transactions to qualify as a financial participant on the date the

---

[14] Complaint, ¶ 62.
[15] *Samson Resources*, 625 B.R at 301.

bankruptcy petition was filed (as well as a date within the 15-month period preceding the petition date), which are the relevant dates in the Bankruptcy Code's definition of "financial participant" set forth in § 101(22A); and (ii) the Redemption Cash Transfers made by SIC as part of the LBO were made "in connection with a securities contract." Because further discovery showed that there are no genuine factual disputes on these issues, the Defendants argue that the safe harbor of § 546(e) applies to prevent the Trustee from avoiding Redemption Cash Transfers made by SIC to applicable Defendants.

In response, the Trustee argues against summary judgment claiming that genuine issues of fact remain as to whether SIC had sufficient transactions to qualify as a financial participant on the date SIC made the Redemption Cash Transfers (i.e., on the transfer date). Thus, the issue now before the Court (as pared down by the parties) is whether an entity must qualify as a financial participant *on the date of the transfer* when analyzing a transaction under the safe harbor of § 546(e).[16]

The Trustee argues that his position is consistent with the plain language of § 546(e), as well as other provisions of the Bankruptcy Code. He asserts that the relevant language of § 546(e) (without ellipses) provides that a trustee may not avoid *a transfer made by a financial participant* in connection with a securities

---

[16] In the 2020 Decision, this Court noted in footnote 37 that the Trustee previously raised this issue. At that time, while referencing the three dates in § 101(22A), this Court decided that the issue was moot "because the Samson Defendants argue[d] that they had agreements or transactions in the requisite amount on the dates of the transfers, as well as on any of the dates in the statute …" This issue was not decided in the 2020 Decision and is now properly before this Court.

contract.[17]  The Trustee argues that, under a natural reading of the statute, a transfer cannot be a "transfer made by a financial participant" unless the transferor is a financial participant at the time of the transfer.  The Trustee asserts that the § 546(e) analysis should not change because a party later attains financial participant status, such as on the petition date.  By way of analogy, the Trustee notes that one determines whether a communication to an attorney is privileged based on the person's status as an attorney at the time of the communication.  A communication cannot retroactively qualify as privileged because a layperson subsequently becomes an attorney.[18]

The Trustee also notes that other Bankruptcy Code provisions similar in construction to § 546(e) require a Court to consider an entity's status as of the date of the transfer.  For example, the Trustee asserts that other courts have considered whether an entity is an "insider" under § 548(a)(1)(B)(ii)(IV),[19] or a "stockbroker" under § 546(e),[20] by focusing on the entity's status at the time of the transfer,

---

[17] Section 546(e) provides, in pertinent part, that:
Notwithstanding sections 544, 545, 547, 548(a)(1)(B) and 548(b) of this title, the trustee may not avoid a transfer … that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7), commodity contract, as defined in section 761(4), or forward contract that is made before the commencement of the case, except under section 548(a)(1)(A) of this title.

[18] The Trustee cites to *Dabney v. Investment Corp. of Am.*, 82 F.R.D. 464, 465-66 (E.D. Pa. 1979) (confidential communication to a law student or law school graduate who has not yet been admitted to the bar and was not acting as an agent of a duly qualified attorney was found not to be privileged).

[19] The Trustee cites to *In re Adam Aircraft Indus., Inc.*, 510 B.R. 342, 352 (10th Cir. BAP 2014) (observing that "§ 548 focuses on insider status both at the time of the transfer and when the obligation was incurred").

[20] The Trustee cites to, *inter alia*, *Hayes v. Morgan Stanley DW Inc. (In re Stewart Fin. Co.)*, 367 B.R. 909, 919 (Bankr. M.D. Ga. 2007) ("[Morgan Stanley DW Inc.] clearly had at least two 'customers' at the time of the subject transfers . . . . In addition to having at least two customers, it is

notwithstanding that an entity's status as an "insider" or a "stockbroker" could change as of the petition date or the transfer date or any other date.

The Trustee further claims that Bankruptcy Code § 362(b)(6) provides an exception for relief from the automatic stay to allow certain entities, including financial participants, to exercise certain contractual rights post-petition. The Trustee asserts that the Defendants' reading of the Code would grant "roving relief from the automatic stay regardless of whether the entity qualified as a financial participant at the petition or even as of the date of the relevant contract."[21]

The Defendants counter that the Trustee's arguments, while claiming to be based on plain language, are actually contrary to the text of the Bankruptcy Code. The Defendants assert that although Code sections 101(22A) and 546(e) are lengthy and "somewhat unwieldly," the portions relevant to the §546(e) SJ Motion are straightforward. Section 546(e) safe-harbors "transfer[s] made by or to … a financial participant … in connection with a securities contract." Who is a financial participant? The Defendants point out that § 101(22A) defines a financial participant as an entity that has agreements or transactions with a particular value, and that value is measured on *any* of three different dates listed in the statute. Those dates are:

(i)     "at the time [the entity] enters into a securities contract;" or

---

clear that MSDW also engaged in the business of effecting transactions in securities."); *Jonas v. Farmer Bros. Co. (In re Comark)*, 124 B.R. 806, 817 (Bankr. C.D. Cal. 1991) ("Comark was a 'stockbroker' when the subject transactions with [the defendant] were 'settled' (i.e., by the payment on June 9, 1982) . . . .").
    [21] Trustee Memo. (Adv. D.I. 354) at 13, ¶ 23.

    (ii)    "at the time of the date of the filing of the petition;" or

    (iii)   "on any day during the 15-month period preceding the date of the filing of the petition"[22]

The Defendants also argue that the Trustee's analogies to other Bankruptcy Code "statuses," such as "insider" and "stockbroker," are inapposite. The Defendants assert that § 546(e) should be read differently for transactions involving a "financial participant" because the Code's definitions of "insider"[23] and "stockbroker"[24] are silent as to when such status should be measured, while the Code's definition of "financial participant" expressly contains the specific measurement dates discussed above. Moreover, the Defendants dispute the Trustee's claim that applying the measurement dates of § 101(22A) for a financial participant creates an open-ended or "roving" exception to the automatic stay in Bankruptcy Code § 362(b)(6). The Defendants argue instead that:

> It makes good practical sense in the context of section 362(b)(6) that an entity's financial participant status would be determined as of (or shortly before) the petition date, since the petition date is when the automatic stay would otherwise bar it from exercising rights. More importantly, it is precisely what the statute says.[25]

The Trustee's argument for determining financial participant status as of the transfer date has a facial attractiveness -- after all, the transfer date is often the relevant date when reviewing an avoidance action involving other types of defendants -- but, in this case the Court cannot ignore the Bankruptcy Code's

---

[22] 11 U.S.C. § 101(22A).
[23] 11 U.S.C. § 101(31).
[24] 11 U.S.C. § 101(53A).
[25] Def. Reply Brief (Adv. Docket No. 363) at 8.

definition of financial participant which sets forth specific dates for determining whether an entity has sufficient agreements or transactions to qualify as such. The Defendants' arguments on this issue are more persuasive and align with the plain language of the Bankruptcy Code. Therefore, the Court concludes that whether an entity is a financial participant is not determined on the transfer date, but on the dates set forth in the Bankruptcy Code's definition of financial participant at § 101(22A).

The Defendants assert that additional discovery, including the declarations submitted with the § 546(e) SJ Motion and other court documents, provide evidence that SIC qualifies as a financial participant because it had the requisite transactions and agreements on the Petition Date and as of August 31, 2015 (i.e., a date within 15 months before the Petition Date).[26] In particular, the Defendants assert that its expert's declarations show that SIC has gross mark-to-market positions in commodity swaps and commodity options with a value in excess of $100,000,000 on the Petition Date and as of August 31, 2015.[27] The Defendants' expert also asserted that using the methodology espoused by the Trustee's expert showed gross mark-to-market value of SIC's commodity swaps and commodity

---

[26] Bankruptcy Code § 101(22A)(A) provides in pertinent part that a "financial participant" means "an entity that, at the time it enters into a securities contract ... or at the time of the filing of the petition, has one or more agreements or transactions described in paragraph (1), (2), (3), (4), (5), or (6) of Section 561(a) [including swap agreements] with the debtor or another entity (other than an affiliate) of a total gross dollar value of not less than $1,000,000,000 in notional or actual principal amount outstanding (aggregated across counterparties) at such time or on any day during the 15-month period preceding the date of the filing of the petition, or has gross mark-to-market positions of not less than $100,000,000 (aggregated across counterparties) in one or more such agreements or transactions with the debtor or any other entity (other than an affiliate) at such time or on any day during the 15-month period preceding the date of the filing of the petition;

[27] The Second Supplemental Declaration of Shane Randolph (Adv. D.I. 349) at ¶¶ 7-8.

options was in excess of $100,000,000 as of the Petition Date and as of August 31, 2015.[28]

The Trustee's opposition to the § 546(e) SJ Motion does not dispute the Defendants' evidence.  Instead, the Trustee argues only the legal issue discussed above: i.e., that the transfer date is the appropriate date to use to determine whether an entity is a financial participant.  Because the Court has rejected the Trustee's legal argument, the Defendants' § 546(e) SJ Motion will be granted.

B.    The Certain Defendants' SJ Motion

Three groups of remaining defendants in this adversary proceeding - - describing themselves as the Released Defendants,[29] the Non-Transferee Defendants,[30] and the Trustee Defendants[31] - - filed the Certain Defendants' SJ Motion seeking summary judgment in favor of the Certain Defendants.

---

[28] *Id.* at ¶ 14.

[29] The "Released Defendants" are SFT (Delaware) Management, LLC ("SFTDM"), ST 2008 (Delaware) Management, LLC ("ST 2008"), Samson Exploration, LLC ("Samson Exploration"), and Samson Offshore, LLC ("Samson Offshore").   The Trustee acknowledged that, under the Release Opinion, Samson Exploration and Samson Offshore would be deemed "affiliates" of certain debtors and therefore would be released in accordance with the Court's interpretation of the relevant Plan release provisions.  (Trustee's Memo. of Law in Opposition to the Certain Defendants SJ Motion (Adv. Docket No. 355) ("Trustee's Opp. Memo.") at ¶ 57 n. 11).  The Trustee also reserved all rights, including appellate rights, with respect to claims against Samson Exploration and Samson Offshore. (*Id.*).

[30] The Non-Transferee Defendants" are Samson Exploration, Samson Offshore, Stacy Family Trust ("SFT"), Stacy Schusterman, and Lynn Schusterman.  For the reasons stated in the previous footnote, the Non-Transferee Defendants' discussion will not include Samson Exploration or Samson Offshore.

[31] The "Trustee Defendants" are C Philip Tholen, Wilmington Savings Fund Society, FSB ("Wilmington Savings"), Stacy Schusterman, and Lynn Schusterman, each to the extent named solely in their capacity as trustees of other defendants independently claiming entitlement of summary judgment.

1.  <u>The Released Defendants</u>

In an opinion dated August 30, 2018,[32] this Court determined that some moving defendants fell within the Plan's broad definition of "Released Party" and were entitled to summary judgment in their favor.[33]  The Release Opinion also recognized that holders of Preferred Interests in the Debtors were expressly *not* included in the Plan's releases.  Two of the Selling Shareholders (SFTDM and ST 2008) argued that they never received or held Preferred Interests and, as former equity holders and affiliates of several Debtors, SFTDM and ST 2008 claimed they fell within the Plan's definition of "Released Party."  In the Release Opinion, this Court found that "the record has not been sufficiently developed with respect to whether SFTDM and ST 2008 were holders of Preferred Interests."[34]  SFTDM and ST 2008 now argue that discovery is complete and there is no open issue  - - the evidence shows that the Foundation is the only Selling Shareholder who received preferred shares of SRC.[35] They claim that neither SFTDM nor ST 2008 ever received or held preferred shares and, therefore, are each a "Released Party."

The Trustee disagrees and argues that SFTDM and ST 2008 were *holders* of the Preferred Interests, "not because they have bare legal right to receive Preferred Shares, but rather because they actually exercised control over the Preferred

---

[32] *Kravitz v. Samson Resources Corp. (In re Samson Resources Corp.)*, 590 B.R. 643 (Bankr. D. Del. 2018) (the "Release Opinion").

[33] In particular, the Schusterman 2008 Delaware Trust and the Stacy Family Delaware Trust were released.

[34] Release Opinion, 590 B.R. at 654.

[35] Declaration of Drew Phillips in Support of Certain Defendants SJ Motion (Adv. Docket No. 352) ("2022 Phillips Decl.") at ¶¶ 12-14.

Shares."[36]  Because the term "holder" was not defined in the Plan, the Trustee

asserts that the Court should look to the dictionary definition of the term and

argues that the term "holder" incorporates "possession,"[37] and the term "possession"

is defined as "[t]he fact of having or holding property *in one's power*; the exercise of

*dominion* over property; . . . something that a person owns or controls."[38]  The

Trustee then asserts that the Stock Purchase Agreement did not specify how the

preferred shares and cash consideration would be allocated among the Selling

Shareholders.  The Trustee claims that Stacy Shusterman has "ultimate decision-

making authority" with respect to the allocation and, acting on behalf of the Selling

Shareholders, Ms. Schusterman decided to allocate all of the preferred shares to the

Foundation.[39]

     The Defendants reply that the Trustee's interpretation of the word "holder" is

overly expansive, and the ordinary use of the word "holder" does not contemplate

that it would include a person who previously exercised influence or gave consent

for some *other* person to possess a security.  The Defendants further assert that

such a broad interpretation would confuse the use of the term "holder" elsewhere in

the Debtors' Plan.  For example, the Plan provides that "Each holder of an Allowed

[Class 3, 4, or 5] Claim will be entitled to vote to accept or reject the Plan."[40]  In

---

[36] Trustee's Opp. Memo. at ¶ 48.

[37] The Trustee asserts that "holder" is defined in Black's Law Dictionary (11th ed. 2019) as "someone who has legal possession of a document or title or an investment security;" "someone who possesses or uses property."

[38] BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added by the Trustee).

[39] Trustee's Opp. Memo at ¶ 16 (citing Zhang Decl. (Adv. Docket No. 356), Ex. O - Phillips 30(b)(6) Dep. Tr. 132:22-133:2)).

[40] Plan, Art. III.B.3(d); 4(d); 5(d).

determining who is entitled to vote on the Plan, the Defendants argue that it stretches common sense to accept that "holder" includes more than the person in possession of a claim but also whoever might have been involved in deciding whether that creditor should have a claim.

The Trustee's argument for expanding the definition of "holder" on these facts is too broad.[42] At the time the Plan was drafted, the entities who were (or had been) "holders of Preferred Interests" were fixed.  There are no allegations that SFTDM or ST 2008 exercised control over Preferred Interests in 2017 (or any time during the Bankruptcy Case) or transferred the Preferred Interests to manipulate which parties fell within the definition.  SFTDM and ST 2008 were not "holders" of Preferred Interests as defined in the 2017 Plan.

Because further discovery confirmed that SFTDM and ST 2008 never received or held Preferred Interests, these entities fall within the Plan's definition of a "Released Party" and summary judgment will be granted in their favor.

2.  <u>The Non-Transferee Defendants</u>

The Non-Transferee Defendants argue that even if the challenged fraudulent transfers are avoided, the Trustee cannot recover the transfers from them under Bankruptcy Code § 550(a), which provides in pertinent part:

> [T]o the extent that a transfer is avoided under section … 548 … of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from
> - -

---

[42] In the Release Opinion, the Court noted "The Trustee's contention at argument that Moving Defendants who never actually received any Preferred Shares in the 2011 LBO are nevertheless "holders" because they may have had an unexercised right to receive Preferred Shares is . . . unavailing."  Release Opinion, 590 B.R. at 654 n. 9.

> (1)  the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2)  any immediate or mediate transferee of such initial transferee.

The parties' arguments analyze the Cash Transfers[43] and the Asset Transfers separately as to each Non-Transferee Defendant.

(a) *Stacy Schusterman*

Non-Transferee Defendant Stacy Schusterman argues that she was not an initial transferee of the Cash Transfers (asserting that only the Selling Shareholders were initial transferees) or the Asset Transfers (asserting that only Samson Energy was an initial transferee).  She also claims that she was not "an entity for whose benefit such transfer was made" under § 550(a)(1) (referred to herein as a "transfer beneficiary"), claiming that any direct or indirect benefit that she might have received as a beneficiary of trusts that owned the Selling Shareholders does not provide the requisite actual, quantifiable, and accessible benefit to fall within the statute.[44] The Trustee vigorously disputes this, arguing that Stacy Schusterman was a transfer beneficiary because she used her position of control over the selling entities to access the cash proceeds and made investments on her own behalf.

---

[43] The Cash Transfers refer to both the Redemption Cash Transfers and the Purchase Cash Transfers.

[44] As the Defendants point out in their brief, an entity is usually determined to be a transfer beneficiary when (i) a third-party guarantor's liability is immediately reduced or eliminated by the transfer, (ii) a third-party's debt is reduced or eliminated by the transfer, or (iii) an under-secured junior creditor's position is immediately improved by the debtor's pay-down of senior debt.  *See* 5 COLLIER ON BANKRUPTCY ¶ 550.02[4] (16th ed. 2022).  There is no dispute that these examples are not relevant here.

To recover from a transfer beneficiary under § 550(a)(1), a trustee must show that the benefit: (i) must actually have been received by the beneficiary; (ii) must be quantifiable; and (iii) must be accessible to the beneficiary.[45]

Stacy Shusterman argues that she did not receive an actual benefit from the Cash Transfers because the transfers went to distinct legal persons: SFTDM and ST 2008, which were LLCs. She also claims that she was never an owner of Samson Energy, which was formed by SFTDM as its initial sole member at the time of the disputed transfers. Stacy Schusterman also argues that her interest as a beneficiary of the trusts owning the LLCs provided her with no access to any benefit arising from the transfers because (even assuming proceeds reached the owner trusts which, she claims, they did not) she could not direct a distribution of proceeds to herself as beneficiary without other trustees exercising their independent fiduciary duties to direct a distribution.

In response, the Trustee cites to various declarations, deposition transcripts and documents to argue that the Selling Shareholders were "mere instrumentalities" of the trusts that owned them, and that Stacy Schusterman, through the various entities, controlled and directed the use of the Cash Transfers and Asset Transfers.[46]  The Trustee claims that there is sufficient evidence to show that Stacy Schusterman received an actual, quantifiable, accessible benefit from the LBO transfers. At the summary judgment stage, the court's function is not to weigh

---

[45] *Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 590 (Bankr. N.D. Ill. 2005); *See also Halperin v. Moreno (In re Green Field Energy Services, Inc.)*, 594 B.R. 239, 287-88 (Bankr. D. Del. 2018).

[46] *See, e.g.,* Trustee's Opp. Memo at ¶ 20, 21, 22, and 33.

the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.[47]  The Court finds that there are outstanding factual issues regarding whether Stacy Schusterman is a transfer beneficiary and summary judgment will be denied.

(b) *SFT*

Non-Transferee Defendant SFT asserts that there is no evidence raising a triable question whether it could be liable as a subsequent transferee or a transfer beneficiary.  The Trustee, however, argues that there is evidence in the record that SFT was a subsequent transferee of the proceeds from the LBO.[48]  Because there are outstanding factual issues, summary judgment to SFT will be denied.

(c) *Lynn Schusterman*

Non-Transferee Defendant Lynn Schusterman argues that there is no evidence that she ever received "a sale proceed, a tangible benefit, an intangible benefit, a hope, or an expectation" from the LBO.  The Trustee argues that summary judgment should be denied because there was some ambiguity in deposition testimony regarding the beneficiaries of the "Selling Trusts" (meaning, the Stacy Family Delaware Trust and the Schusterman 2008 Delaware Trust, which own the Selling Shareholders).[49] However, the Trustee has not pointed to any

---

[47] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[48] Trustee's Opp. Memo at ¶¶ 55-56.

[49] The Trustee also faults Lynn Schusterman for not executing a declaration affirming that she did not receive any value from the LBO transfers earlier in this case.  However, it is the Trustee's burden to come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

evidence in the declarations, depositions or documents that would indicate that Lynn Schusterman was an initial transferee, a transfer beneficiary or a subsequent transferee of the LBO transfers.  Accordingly, summary judgment on this issue will be granted in favor of Lynn Schusterman.

   3. <u>The Trustee Defendants</u>

The Trustee Defendants argue that they were each sued in their capacity as co-trustees of trusts that were determined to be released under the Plan and have been dismissed from this lawsuit or trusts that the Defendants argue should be dismissed from the lawsuit (SFT). The Trustee Defendants claim that if the trusts are dismissed as defendants, then they should be dismissed as defendants as well.

The Trustee argues that when property controlled by a trust is the subject of a fraudulent conveyance action, the trustees of that trust are proper defendants.[50]

In another case involving a trustee seeking dismissal (arguing that the sole recourse of the plaintiff with fraudulent transfer claims against the trust was the trust, itself, and not the trustee), the Court denied the dismissal motion, explaining:

> [T]he party with the capacity to defend a suit on behalf of a trust is the trustee.  As the party with legal title to the corpus of a trust, the trustee is the proper party to be sued as transferee in fraudulent transfer claims.  As trustee of the [named trust], [the trustee] is the appropriate defendant in a suit seeking to remedy fraudulent transfers to those trusts.[51]

---

[50] It appears the Trustee is arguing that as long as a *transfer* involving a trust is still at issue (even if the transfer could not be recovered from the Trust, but - - for example - - could be recovered from a subsequent transferee), then the trustee should remain as a defendant.  The Court does not agree.

[51] *U.S. on behalf of F.T.C. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 841 F.Supp. 899, 903-04 (D. Minn. 1993) (citations omitted).

In this case, this Court previously determined that two of the trust defendants (Schusterman 2008 Delaware Trust and the Stacy Family Delaware Trust) were released under the Plan and, therefore, were dismissed from the case. Therefore, the Trustee cannot seek to recover purported fraudulent transfers from those trust defendants or, more particularly, from the corpus of the trusts. Because the Trustee can no longer seek to remedy fraudulent transfers *from those trusts*, the Trustee Defendants of the dismissed trusts should likewise be dismissed to the extent they are being sued in their capacity as trustees.

Accordingly, claims against C. Philip Tholen (as trustee of the Schusterman 2008 Delaware Trust) and Wilmington Savings (as trustee of the Schusterman 2008 Delaware Trust and the Stacy Family Delaware Trust) will be dismissed, because they were sued in their capacities as trustees of the dismissed trusts. Similarly, claims against Stacy Schusterman will be dismissed only to the extent she is named as a defendant in her capacity as trustee for the Stacy Family Delaware Trust (but, as stated previously herein, claims against her individually are not dismissed).

Because SFT (the Stacy Family Trust) remains a defendant in this adversary proceeding, claims against both Stacy Schusterman and Lynn Schusterman as defendants in their capacity as trustees for SFT will also remain. Wilmington Savings was also sued in its capacity as trustee for SFT, but Wilmington Savings contends that it was never a trustee for SFT. Because there is no evidence that Wilmington Savings was a trustee for SFT, claims against Wilmington Savings as a trustee of SFT will be dismissed.

<u>CONCLUSION</u>

For the reasons set forth above, the Court concludes as follows:

(1)     The § 546(e) SJ Motion is GRANTED;

(2)     The Certain Defendants' SJ Motion is granted, in part, and denied, in part, as follows:

     a.    The request for summary judgment by the Released Defendants (SFTDM, ST 2008, Samson Exploration, and Samson Offshore) is GRANTED;

     b.    Stacy Schusterman's request for summary judgment in her individual capacity as a Non-Transferee Defendant is DENIED;

     c.    SFT's request for summary judgment as a Non-Transferee Defendant is DENIED,

     d.    Lynn Schusterman's request for summary judgment in her individual capacity as a Non-Transferee Defendant is GRANTED;

     e.    C. Philip Tholen's request for summary judgment in his capacity as trustee to the Schusterman 2008 Delaware Trust is GRANTED;

     f.    Wilmington Savings' request for summary judgment in its capacity as trustee to the Schusterman 2008 Delaware Trust, the Stacy Family Delaware Trust, and SFT is GRANTED;

g.      Stacy Schusterman's request for summary judgment in her
capacity as trustee to the Stacy Family Delaware Trust is
GRANTED, but her request for summary judgment in her
capacity as trustee to SFT is DENIED;

h.      Lynn Schusterman's request for summary judgment in her
capacity as trustee to the Stacy Family Delaware Trust is
GRANTED, but her request for summary judgment in her
capacity as trustee to SFT is DENIED.

*[remainder of page intentionally left blank]*

The parties shall confer and submit an appropriate Order consistent with this Opinion under certification within 14 days of the date hereof.

FOR THE COURT:

BRENDAN LINEHAN SHANNON
United States Bankruptcy Judge

Dated:  August 4, 2022